# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-487

**CHL ENTERPRISES, LLC, D/B/A LOEWER LAWN & CYCLE**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF REVENUE**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 231,257,
HONORABLE DONALD T. JOHNSON,
DISTRICT COURT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Oswald A. Decuir, Michael G. Sullivan and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Antonio Charles Ferachi**
**P.O. Box 4064**
**Baton Rouge, LA 70821-4064**
**Attorney for Defendant/Appellant:**
**State of Louisiana, Department of Revenue**

**John W. Munsterman**
**P.O. Box 1848**
**Alexandria, LA 71309-1848**
**Attorney for Plaintiff/Appellee:**
**CHL Enterprises, LLC, d/b/a Loewer Lawn**
**& Cycle**

**GREMILLION, Judge.**

This appeal emanates from the district court's judicial review of the decision of the Louisiana Board of Tax Appeals (BTA) regarding the findings of an audit of Loewer Lawn & Cycle's records. That audit found that Loewer failed to collect taxes on items that purchasers improperly claimed were exempt from sales tax. Loewer was assessed sales taxes on those items in the amount of $16,237.20 plus interest totaling $10,115.69. Loewer sought judicial review of the BTA assessment. The district court reversed the BTA assessment. This appeal ensued. For the reasons that follow, we affirm the district court.

## FACTS

CHL Enterprises, LLC, sells motorcycles, all-terrain vehicles, power equipment and farm implements under the name "Loewer Power Sports and Equipment," in Alexandria, Louisiana. Among the brands Loewer sells are Kubota tractors. It also offers Toro and Stihl mowers and other lawn care equipment. Loewer and its competitors are aware of the exemption from state sales taxes codified in La.R.S. 47:305.25 for certain types of equipment.[1] Loewer's customers who feel their

---

[1]

Louisiana Revise Statute 47:305.25 reads in pertinent part:

A. The tax imposed by R.S. 47:302(A), R.S. 47:321(A), and R.S. 47:331(A) with respect to the sale and use of farm equipment shall apply only to that portion of the sale price in excess of fifty thousand dollars for each item of farm equipment. For the purpose of this Section, "farm equipment" includes the following:

    (1) Rubber tired farm tractors, cane harvesters, cane loaders, cotton pickers, combines, haybalers, and attachments and sprayers.

    (2) Clippers, cultivators, discs, plows, and spreaders.

    (3) Irrigation wells, drives, motors, and equipment.

    (4) Other farm implements and equipment used for agricultural purposes in the production of food and fiber.

    (5) On the farm facilities used to dry or store grain or any materials used to construct such on the farm facilities.

B. This exemption applies only to sales and use taxes imposed by the state of Louisiana and does not apply to such taxes authorized and levied by any school board, municipality, or other local taxing authority, except that in the parish of West

1

purchases qualify for one of these exemptions are provided forms prepared by the Louisiana Department of Revenue (LDR) with which to apply for the exemptions. Loewer generally relied upon the forms prepared by LDR in determining whether a transaction qualified for the exemption. Loewer also relies upon the representation of its customer that the implement is being used for the purposes which qualify it for the exemption.

In 2004, LDR conducted an audit of Loewer's records for the period of January 1, 1999, through May 31, 2002. The auditor, Mr. Ronnie Mesick, determined that Loewer had failed to collect sales taxes on items that Loewer's purchasers had claimed were exempt. Following his field audit, Mesick and his supervisor, Mr. Mark Bynog, met with Mr. David Broussard, Loewer's Chief Operating Officer, to discuss Mesick's findings. In particular, Loewer and the auditors disagreed regarding the exempt status of various implements that Loewer maintained were "attachments" to rubber tired farm tractors. They also disagreed over the characterization of some of the transactions as involving "rubber tired farm tractors." The third area of disagreement concerned the sale of equipment that clearly did not qualify as rubber tired farm tractors, but that did—according to Loewer's customers—qualify as "other equipment used in agricultural production of food and fiber."

Loewer continued to maintain that the exemptions were proper, and took the

Carroll, the parish school board may exempt the equipment as provided in this Section from additional sales and use taxes after approval by a majority of the qualified electors of the parish and the police jury may exempt the equipment as provided in this Section from all sales and use taxes which it is presently levying and collecting and shall exempt such equipment from any additional sales and use tax or taxes which it may hereafter levy and collect.

2

matter up with an audit reviewer, Ms. Peggy Parker. Ms. Parker did amend the original "Notice of Assessment" to recognize as exempt transactions amounting to $2,072.78. Thus, LDR maintained, Loewer owed taxes of $16,237.20, plus interest.

Loewer appealed to the BTA. Its appeal was heard on November 13, 2007. At the hearing, Loewer attempted to introduce into the record the original documentation of the sales at issue. The chair of the BTA asked whether a three-page summary prepared by Loewer's CPA, Mr. Mark McKay, would suffice in lieu of the box of original documents. No objection was voiced. This summary offers only vague descriptions of the items sold, and is the only documentary evidence of the nature of these transactions.

McKay's summary broke the items down into twelve categories: (1) attachments for which exemption certificates were filed that were purchased with tractors; (2) attachments not purchased with tractors, but for which exemption certificates were filed; (3) tractors for which exemption certificates were filed; (4) equipment for which exemption certificates were filed; (5) attachments for which no exemption certificates were filed; (6) equipment for which no exemption certificates were filed; (7) sales on which taxes were paid; (8) a sale to a state governmental entity; (9) a sale to an out-of-state customer; (10) sales not reviewed by the auditor; (11) sales not exempt that Loewer admittedly owned and subsequently paid taxes on; and (12) an "unknown" transaction. In its ruling, the BTA also referred to these categories, but we find that for purposes of our decision, it is only necessary to group the transactions into two categories: rubber tired farm tractors and attachments, and other equipment.

3

## ASSIGNMENTS OF ERROR

LDR assigns five errors it contends were committed by the trial court:

(1) Reversing the BTA findings regarding the transactions being characterized as lawn and garden tractors, in light of the strict construction given tax exemptions;

(2) Finding the Category 4 and 6 equipment exempt given the legislature's suspension of the exemption for such equipment used in the production of food and fiber;

(3) Not applying a heightened standard for estoppel against a government agency;

(4) Finding that Loewer relied upon the exemption certificates issued by LDR to its detriment; and,

(5) Finding that the exemption certificate entitled Loewer to the exemptions.

## ANALYSIS

The most basic precept of Louisiana law is that the sources of law are legislation and custom. La.Civ.Code art. 1. In interpreting law, courts in Louisiana are to apply clear and unambiguous laws as written, without resort to the legislature's intent, unless that application leads to absurd consequences. La.Civ.Code art. 9. Because the issue before us is the interpretation of La.R.S. 47:305.25, our analysis must begin with the determination of whether this statute is clear and unambiguous.

Section 305.25(A) establishes the broad proposition that the first $50,000.00 per item of the sale and use of "farm equipment" is exempt from the taxes imposed by La.R.S. 47:302(A), La.R.S. 47:321(A) and La.R.S. 47:331(A). The legislature defines "farm equipment" as: (1) rubber tired farm tractors, cane harvesters, cane loaders, cotton pickers, combines, haybalers, and attachments and sprayers; (2) clippers, cultivators, discs, plows, and spreaders; (3) irrigation wells, drives, motors, and equipment; (4) other farm implements and equipment used for agricultural purposes in the production of food and fiber; and (5) on the farm facilities used to dry or store grain or any materials used to construct such on the farm facilities.

LDR argues that the exemption does not apply if the equipment is not being

4

sold to a farmer or if the equipment is not being used in the production of food or fiber. This interpretation of the statute does not comport with its unambiguous language. Certain equipment is specifically exempted: rubber tired farm tractors, cane harvesters, cane loaders, cotton pickers, combines, haybalers, clippers, cultivators, discs, plows, spreaders, irrigation wells and accouterments that operate and drive them, attachments, sprayers and farm facilities used to dry or store grain and the materials used to construct same. The statute also contains an omnibus exemption for "other farm implements and equipment used for agricultural purposes in the production of food and fiber." LDR also argues that items not specifically listed, such as augers or loaders, are not exempted from the tax despite the fact that they may constitute either attachments to rubber tired farm tractors and the like, or that they may qualify as other farm implements and equipment used for agricultural purposes.

Another time-honored precept of statutory interpretation is that the legislature never adopts superfluous language. It is presumed that the legislature's choice of language was intended to produce a result. *ABL Mgt., Inc. v. Board of Sup'rs of Southern Univ.,* 00-0798 (La.11/28/00), 773 So.2d 131; *Wimberly v. Blue*, 08-1535 (La.App. 3 Cir. 5/9/09), 11 So.3d 560.

Under LDR's interpretation of the statute, it would have been unnecessary for the legislature to have specifically defined farm equipment in the manner it did. All that would have been necessary was for the legislature to have exempted equipment used for agricultural purposes in the production of food and fiber. In other words, LDR's interpretation of the statute effectively writes out of the statute the other four categories of equipment defined as "farm equipment." The statute is very

5

straightforward: if an item falls within one of the five categories, it is exempt. There appears to be no ambiguity in the statute. No absurd consequences flow from applying the law as written.

LDR does not seem to consistently apply this standard. In the present matter, it allowed exemptions to customers who were quite clearly identified as commercial nurseries, who arguably are not involved in the production of food and fiber. LDR's reliance on the "food and fiber" test is particularly perplexing in light of its insistence—correctly, as it turns out—that exemptions (3), (4) and (5) were suspended by the legislature for the period Loewer was audited. *See* La.R.S. 47:302(N) and (O). The "food and fiber" language only involves the omnibus exemption of La.R.S. 47:305.25(A)(4).

LDR counters that tax statutes are different. When determining whether a tax is imposed, courts are to strictly construe the enabling statute in favor of the taxpayer; conversely, exemptions are strictly construed against the taxpayer. *Sherwood Forest Country Club v. Litchfield*, 08-194 (La. 12/19/08), 998 So.2d 56; *McNamara v. Central Marine Serv., Inc.*, 507 So.2d 207 (La. 1987). The burden is on the taxpayer to establish unequivocally and affirmatively that he is entitled to the exemption. *Archer Daniels Midland Co. v. Parish Sch. Bd. of the Parish of St. Charles*, 01-511 (La. 11/28/01), 802 So.2d 1270. Because of these standards of proof, a discussion of the district court's role in reviewing administrative decisions of bodies such as BTA, and this court's role in reviewing the decisions of the district court, is necessary.

The Louisiana Administrative Procedures Act defines the scope of the district court's judicial review of administrative decisions in La.R.S. 49:964. Section (F) provides that the district court's review is confined to the record. Section (G)

6

provides:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

Thus, the role of the district court is to review the record prepared at the administrative proceeding, and determine whether the substantial rights of the appellant have been prejudiced in any one of the six ways prescribed. We have previously stated that BTA acts as a trial court, and its findings of fact are to be accepted when supported by substantial evidence. *Daigle Bros. Sand & Gravel, Inc. v. Sec. of Dep't of Revenue and Taxation*, 594 So.2d 935 (La.App. 3 Cir. 1992). Such findings are subject to review under the manifest error standard. *Id.* Because BTA acts as a trial court, due deference is to be given to its determinations of credibility of witnesses. La.R.S. 49:964(G)(6).

The standard of review before this court is that applicable to most appeals, manifest error. *Lirette v. City of Baton Rouge*, 05-1929 (La.App. 1 Cir. 10/6/06), 945 So.2d 40, *writ denied*, 06-2659 (La. 1/8/07), 948 So.2d 129. That is, the district court's findings of fact must have no reasonable support in the record, and the finding must be clearly wrong to be reversed. *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993).

The district court reviewed the record of the BTA proceedings and found that the witnesses testified that the attachments were attachments for rubber tired farm tractors. BTA held that they constituted lawn and garden tractors and attachments. Our review of the record reveals unequivocal testimony that the items were rubber tired farm tractors and attachments thereto. Nothing supports the notion that these transactions involved lawn and garden tractors, other than Parker's testimony as to what her auditor thought the transactions involved. We, therefore, find that the district court's findings that these constituted rubber tired farm tractors and attachments thereto is supported by the record. Those findings are affirmed.

The items that constitute equipment other than rubber tired farm tractors and attachments are problematic. LDR correctly points out that La.R.S. 47:302(N) and (O) suspended by exclusion the exemptions contained in La.R.S. 47:305.25(A)(3), (4) and (5). The district court found that, while the exemptions had been suspended, Loewer relied to its detriment on the forms for applying for the exemptions prepared by LDR. LDR argues that the district court erred in applying detrimental reliance, because a different standard applies to governmental agencies against which such a theory is being urged.[2] When faced with an unambiguous statute, LDR urged at oral

_____

[2] This would be more aptly termed judicial estoppel.

8

argument, estoppel is "shut down," regardless of what advice a taxpayer is given by the agency.

In support of this argument, LDR directs our attention to the case of *Showboat Star Partnership v. Slaughter*, 00-1227 (La. 4/3/01), 789 So.2d 554. In *Showboat Star*, the supreme court established a four-pronged test to determine whether a party may avail itself of estoppel against a public agency: (1) unequivocal advice from an unusually authoritative source; (2) reasonable reliance on that advice; (3) extreme harm resulting from the reliance; and (4) gross injustice occurring in the absence of estoppel. An examination of the *Showboat Star* facts is useful in understanding how courts view these factors.

During the Louisiana gaming industry's infancy, representatives of LDR (then known as the Louisiana Department of Revenue and Taxation) and the Internal Revenue Service met with representatives of the gaming industry to educate and assist the industry in dealing with taxation issues. One issue discussed was the sales tax exemptions for materials incorporated into gaming boats. LDR determined that operators were entitled to an exemption for the gaming equipment incorporated into the boats. This was communicated to the operators during one of these meetings. Plaintiffs in the *Showboat Star* case relied upon these representations and upon the exemption certificates published by LDR in claiming exemption for gaming equipment. Two years later, LDR audited plaintiffs' operators and determined that they owed a sizeable amount of unpaid sales taxes, on the premise that gaming equipment and other items not secured to the decks of the vessels were not exempt from the sales tax. This represented a clear reversal of LDR's previous position as communicated during the industry meetings and in the exemption certificates.

9

The plaintiffs paid the taxes under protest. They then sued to recover the protested payment. The trial court sided with LDR on the issue of whether the equipment was exempted, but determined that it was estopped from collecting the taxes based upon the representatives' assertions during the industry meetings. LDR appealed the decision, which was affirmed. *Showboat Star Partnership v. Slaughter*, 98-2882 (La.App. 1 Cir. 2/18/00), 752 So.2d 390. The supreme court granted writs, *Showboat Star*, 00-1227 (La. 6/16/00), 763 So.2d 612.

The supreme court's analysis began by noting that the exemption did not apply to equipment that was not a component part of the gaming vessel. Therefore, the tax was due by the wording of the statute. It then examined the estoppel claim. The four-step analysis noted above actually came from the first circuit's opinion. The supreme court simply noted that plaintiffs sustained no extreme harm from the application of the taxes, nor did extreme injustice result. Citing Arizona jurisprudence, the court held that there was no detriment to plaintiffs in being forced to pay taxes they owed.

This brings us to the application of *Showboat Star* to this case. With regard to the first element, we note that the exemption certificate (Form R-1060) on which Loewer relied was promulgated by LDR. That certificate stated:

> Covered by the exemption is the first $50,000.00 of the sales price of each unit of rubber tired farm tractors, cane harvesters, cane loaders, cotton pickers, combines, haybalers, similar commercial farm implements, and attachments to such implements, including sprayers, clippers, discs, plows, and spreaders; and irrigation wells, drivers, motors and equipment. The parts used in the repair or modification of any of the above are not eligible for exemption.

This certificate was employed by LDR through three iterations that are contained in the record, the last of which was revised in 2002, and still mentioned nothing about the legislature's suspension of exemptions (3), (4) and (5). Indeed, it appears that

10

LDR did not inform taxpayers of the suspension of those exemptions until 2006.

We find that a document prepared by the governing agency and promulgated for the purpose of use by the general public constitutes an "unusually authoritative source" on which people can rely, as opposed to advice rendered by an agent or employee of the agency. Loewer was relying upon unequivocal advice from an unusually authoritative source in accepting the exemption certificates from customers.

Loewer's witnesses testified that they did rely upon the exemption certificates. If the advice was from the agency itself, which we have already noted is unusually authoritative, the reliance cannot be said to be unreasonable. LDR drafted and promulgated as an official document the exemption forms on which Loewer relied. Its position now is that Loewer was unreasonable in relying upon that document. That position is absurd as illustrated by the 2006 revision LDR undertook, which clarifies the exemptions that had been suspended.

Having found that Loewer met the first two conditions for establishing estoppel, we next look to whether extreme harm resulted from Loewer's reliance, and whether gross injustice must result in an absence of estoppel. Loewer is merely the collector of sales taxes, in contrast to the plaintiffs in the *Showboat Star* case who were themselves the taxpayers. La.R.S. 47:304 places the onus on the dealer to collect the taxes, the failure of which not only can result in the dealer being liable for those taxes but also subject to fine and/or imprisonment. Loewer's failure to collect the taxes in reasonable reliance on LDR's flawed exemption certificate resulted in its liability to LDR for those taxes and interest. There is no harm in requiring a business to pay its own taxes. That business is clearly harmed, however, when it is required to pay someone else's taxes. We find that Loewer has established the third element

11

of estoppel under *Showboat Star.*

Had the exemption certificate properly informed the dealer and purchaser that the "other equipment" was not exempt, Loewer would have collected those taxes at the point of sale. As it is, Loewer is without recourse against the true taxpayer, as Section 304 only allows the merchant to recover from the purchaser when the sales tax is added at the point of sale. *See Baton Rouge Press, Inc. v. Andries*, 03-808 (La.App. 3 Cir. 2/4/04), 865 So.2d 950, *writ denied*, 04-592 (La. 6/4/04), 876 So.2d 91. Both extreme harm and gross injustice result from an agency officially misconstruing the exemption.[3] Had Loewer been advised properly, the taxes would have been collected from those whom Loewer was charged with collecting. Nor would Loewer be faced with interest on those taxes in excess of 62 percent.

We are unpersuaded by LDR's argument that an unambiguous statute precludes the application of estoppel. Were that the case, the supreme court's application of estoppel analysis would be superfluous.

**CONCLUSION**

LDR interpreted the exemption contained in La.R.S. 47:305.25 in an overly-restrictive manner. The plain wording of the statute exempts rubber tired farm tractors and attachments from state sales taxes. Loewer did not collect sales taxes on rubber tired farm tractors and attachments because those sales were exempt. LDR promulgated an exemption certificate that represented unequivocal advice from the agency itself that equipment used in the production of food and fiber was exempt.

---

[3] We do not use this phrase flippantly. That LDR misinterpreted what is and is not exempt is illustrated not only by its exemption certificate but also by its insistence that rubber tired farm tractors are only exempt when sold to "farmers" who are using them in the production of food and fiber, which is, as noted above, an interpretation of the statute wholly unsupported by the wording of La.R.S. 47:305.25.

12

Loewer relied to its detriment on that advice. LDR is now estopped from collecting the sales taxes on such equipment.

**AFFIRMED.**