957 So.2d 911 (2007)
Mildred K. JOHNSON, et al., Plaintiffs-Appellees
v.
Charles Joseph LEDOUX, Defendant-Appellant.
No. 42,090-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
Rehearing Denied June 14, 2007.
*912 Nelson, Zentner, Sartor, & Snellings, by: Allison M. Jarrell, David H. Nelson, Monroe, for Appellant.
Hudson, Potts, & Bernstein, by Mark J. Neal, Johnny R. Huckabay, II, Monroe, for Appellees.
Before BROWN, CARAWAY, and DREW, JJ.
BROWN, Chief Judge.
Lessor, Charles Ledoux, and his insurer, Employers Mutual Casualty Insurance Company, have appealed from the trial court's judgment awarding damages to lessee, Johnson & Johnson Sales, Inc. The trial court specifically found that the roof of the leased premises collapsed during a "low" wind storm because "Defendant's contractual mandated maintenance was not performedthus, the contract of lease was breached." For the following reasons, we reverse.

Facts and Procedural History
Johnson & Johnson Sales, Inc., was a window and door glass manufacturing and sales corporation. It was operated by Robert Johnson. In 1990 when Johnson's health began to fail, the company suspended operations and leased a building from Ledoux to store its inventory and equipment. In 1991, Robert Johnson died. For the next 12 years, the Johnson children *913 continued the lease. On March 12, 2003, the roof on the leased premises collapsed, damaging the contents. On March 1, 2004, the Johnson children and unopened succession filed this action against Ledoux; however, the petition was amended in May of 2005 to name the corporation as plaintiff and to add Ledoux's insurer, Employers Mutual, as a defendant. The original plaintiffs were dismissed, leaving Johnson & Johnson Sales, Inc., as sole plaintiff.
After the trial court's denial of an exception of prescription, the matter was tried, and the court rendered judgment in favor of Johnson & Johnson Sales, Inc., awarding $207,086.08 in damages, plus interest from the date of judicial demand until paid, together with all costs of the proceedings. It is from this judgment that defendants have appealed.

Discussion
Prescription
Defendants argue that the original petition alleged a tort action with a one-year prescriptive period, and the corporate plaintiff did not join the current suit via an amendment to the petition until May 16, 2005, more than two years after the roof collapsed.
The applicable prescriptive period is determined by the character of the action disclosed in the pleadings. Starns v. Emmons, 538 So.2d 275 (La.1989). The nature of the basic underlying action determines the appropriate prescriptive period. Fishbein v. LSU Health Sciences Center, 04-2482 (La.04/12/05), 898 So.2d 1260.
La. C.C.P. art. 1153 provides that when an action asserted in an amended petition arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
The court in Giroir v. South Louisiana Medical Center, 475 So.2d 1040, 1044 (La.1985), summarized the law as to late-added plaintiffs as follows:
An amendment adding or substituting a plaintiff should be allowed to relate back if (1) the amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleading; (2) the defendant knew or should have known of the existence and involvement of the new plaintiff; (3) the new and old plaintiffs are sufficiently related so that the added or substituted party is not wholly new or unrelated; (4) the defendant will not be prejudiced in preparing and conducting his defense.
The trial court found that the pleadings characterized an action in contract. The initial petition did allege an action in tort; however, it also pled elements of a breach of contract which has a 10-year prescriptive limitation. Even so, the amendment adding the corporate plaintiff involved the same building collapse, property damage, defendant, and lease agreement. The original petition alleged the existence of the lease. Ledoux drafted the lease with the corporation as the lessee. Ledoux was aware of his potential liability when the roof collapsed. There was no prejudice to Ledoux or his insurer.
The Lease Agreement
A lease agreement, like other contracts, is the law between the parties. Corbello v. Iowa Production, et al., 02-0826 (La.02/25/03), 850 So.2d 686. The meaning and intent of the parties to a written instrument should be determined within the four corners of the document. Shoreline Gas, Inc. v. Grace Resources, Inc., 34,517 (La.App.2d Cir.04/04/01), 786 So.2d 137. When the words of a contract are clear and explicit, and lead to no absurd consequences, no further interpretation *914 need be made into the parties' intent. La. C.C. art.2046. Any doubt in the language of a contract that cannot be otherwise resolved must be interpreted against the party that furnished its text. La. C.C. art.2056; Louisiana Gaming Corp. v. Kayell Enterprises, Inc., 35,297 (La.App.2d Cir.12/05/01), 804 So.2d 736.
The lease as drafted by Ledoux contained the following provisions:
[L]essee does release and relieve lessor from liability, which might accrue to lessee by reasons of damages occasioned to the property and any products of lessee located or stored in or upon the premises.
Lessee further binds and obligates itself to hold harmless and to indemnify and to defend lessor from any and all claims whatsoever occasioned by reasons of the condition of the building or lessee's use thereof.
Lessor shall not be liable for any damage to person or property sustained by the lessee or any other persons, and any such liability is assumed by lessee.
[L]essor hereby waives any and all rights of recovery against Lessee, and all persons for whose actions Lessee is or may be responsible, for any loss by insured peril occurring to the building or other improvements situated on the premises, and hereby agrees not to assign to any insurer any right or cause of action for any insured damage which may occur during the term of the lease or any extension hereof; and Lessee does hereby waive any and all rights of recovery against Lessor, and all persons for whose action Lessor is or may be responsible, for loss by insured peril occurring to any furniture, fixtures or other leasehold improvements of Lessee or to the merchandise or stock goods of Lessee, situated on or in the leased premises, and hereby agrees not to assign to any insurer any right or cause of action for any insured damage to said property which may occur during the term of this lease or any extension hereof.
Lessor warrants that the lease premises are in good condition

Lessor agrees to maintain only the roof and outside walls of the premises. Lessee agrees to maintain the heating and air-conditioning systems, plumbing, upkeep of interior walls, floors, etc., and all plate glass windows and doors. Lessor shall not be held responsible for any damage to Lessee's furniture, fixtures or merchandise caused by fire, flood, broken pipes, roof leaks, etc. (Emphasis added).
These provisions contain strong language that supports defendants' argument. This was an "as is" month-to-month lease for a nominal $275 monthly rent. It is clear that the lessor did not intend to be held liable for damages to lessee's property. Plaintiff's property was stored at the premises for more than 12 years before the roof collapsed. Considering that the lease relationship extended for many years and the building served its purpose, the warranty of "good condition" was met. The issue presented in this case, as noted by the trial court, has to do with maintenance. The lessor was only responsible to maintain the roof and outside walls. However, that same provision provided that lessor shall not be responsible for damages to lessee's property caused by roof leaks, etc. The "etc." would include damages due to the maintenance, or lack thereof, of the roof or outside walls.
Whether a contract is ambiguous or not is a question of law. L.S. Huckabay, M.D. Memorial Hosp., Inc. v. KPMG Peat Marwick, LLP, 36,775 (La. App.2d Cir.04/9/03), 843 So.2d 1186, writs *915 denied, 03-1334 (La.09/19/03), 853 So.2d 640, 03-1400 (La.09/19/03), 853 So.2d 646. In the case of ambiguity in a contract, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. Lawrence v. Terral Seed, Inc., 35,019 (La.App. 2d Cir.09/26/01), 796 So.2d 115, writ denied, 01-3134 (La.02/01/02), 808 So.2d 341; Spohrer v. Spohrer, 610 So.2d 849 (La. App. 1st Cir.1992).
The trial court did not need to rely on factual findings to interpret the lease agreement, and thus we must review whether the trial court was legally correct. The language, "Lessor agrees to maintain only the roof and outside walls of the premises" is clear and plain. Defendants argue that the last line of that paragraph, "Lessor shall not be held responsible for any damage to Lessee's furniture, fixtures or merchandise caused by fire, flood, broken pipes, roof leaks, etc" relieves defendants of liability in this case.
In the first line, the lessor accepted the obligation to maintain the roof; however, in the same paragraph lessee waives any liability of the lessor for damages to the contents due to the failure to provide the maintenance.
Thus, we find that the trial court made an incorrect legal interpretation of the lease agreement when it found that defendants were liable for damages caused by the roof collapse due to a breach of that lease provision.

Conclusion
For the reasons set forth above, the trial court's judgment is REVERSED and IT IS ORDERED, ADJUDGED, and DECREED that there be judgment in favor of defendants dismissing plaintiff's action at plaintiff's cost.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.