PEATROSS, J.
 

 | plaintiff, First Louisiana Bank (“First Louisiana”), filed suit against Defendant, Morris & Dickson Co., LLC (“Morris & Dickson”), seeking recovery for loans it made to Material Management Systems, Inc. (“MMS”). Morris & Dickson had hired MMS to complete a project and the loans were to facilitate the work by MMS. MMS defaulted on the loans and First Louisiana asserted that Morris & Dickson had guaranteed the loans by letter stating that it would include First Louisiana as a payee on checks made payable to MMS. The trial court granted an exception of prescription filed by Morris & Dickson. First Louisiana and Ronald Tuminello, in-tervenor, appeal. For the reasons stated herein, we reverse the ruling of the trial court and remand the matter for further proceedings.
 

 FACTS
 

 Morris & Dickson hired MMS to install an intertake pallet pick system in a warehouse owned by Morris & Dickson in Cad-do Parish. Morris & Dickson issued three purchase orders to MMS regarding the installation. The first purchase order, # 031223-02, was in the amount of $196,450.50.
 

 MMS sought financing from First Louisiana. First Louisiana agreed to make
 
 *1049
 
 two loans to MMS on the condition that Morris & Dickson would include First Louisiana as an additional payee on its check to MMS in payment of the first purchase order. As requested by Ron Boudreaux, President and Chief Executive Officer of First Louisiana, Paul Dickson, Vice President of Morris & Dickson, authored a letter, dated January 15, 2004, in which he stated:
 

 |2Payment for [purchase order # 031223-02] issued to Material Management Systems will be made payable to Material Management Systems and First Louisiana Bank Attn: Ron Bou-dreaux.
 

 On receipt of the letter, First Louisiana made the first loan to MMS on January 26, 2004, in the amount of $50,070 with a maturity date of April 26, 2004. The second loan was made on February 26, 2004, in the amount of $65,072 with a maturity date of May 26, 2004. MMS also gave First Louisiana a security interest in the first purchase order and the bank made the required UCC filings. In addition, Bob Eizel of MMS and Ronald Tuminello, a longtime customer of the bank, issued continuing guarantees on both notes.
 

 MMS did not complete the project to the satisfaction of Morris & Dickson and defaulted on the loans. Mr. Tuminello, however, had been paying the interest on the loans over the course of the project. Following the default by MMS, Mr. Bou-dreaux discovered from Mr. Tuminello that Moms & Dickson had issued checks toward the project payable only to MMS, failing to include First Louisiana as a payee. In June 2004, Mr. Boudreaux discussed the situation with Ray Skinner of Morris & Dickson and Mr. Tuminello with no resolution. On August 20, 2004, the bank sent demand letters to Morris & Dickson to no avail.
 

 On June 13, 2005, First Louisiana sued MMS and Mr. Eizel, reserving its rights against Mr. Tuminello (because Mr. Tumi-nello had kept the interest payments current). First Louisiana obtained a default judgment against MMS and Mr. Eizel recognizing the security interest in the purchase order. By that time, however, MMS and Mr. Eizel were in bankruptcy. | oFirst Louisiana then sued Morris & Dickson on September 8, 2006, for breach of the agreement of Morris & Dickson to include the bank as a payee on the check to MMS in payment of the first purchase order. Morris & Dickson answered the suit, averring that its agreement to include the bank as an additional payee on the check in payment of the purchase order was conditioned on notification, authenticated by First Louisiana, to Morris & Dickson that “an amount due” had been assigned to First Louisiana, which notification was never provided. Morris & Dickson denied that it had made any commitment to First Louisiana and stated that the letter “was not an offer to contract with First Louisiana.”
 

 On May 21, 2007, Mr. Tuminello filed a petition for intervention, alleging breach of contract by Monis & Dickson and seeking reimbursement of the payments made by him on the assigned purchase order.
 

 On January 17, 2008, Morris
 
 &
 
 Dickson filed a peremptory exception of prescription. Morris & Dickson characterized the claims of First Louisiana and Mr. Tuminel-lo as ones of detrimental reliance and urged that the claims had prescribed because the bank knew that Morris & Dickson had not included the bank as an additional payee on the subject check on or before August 30, 2004 (recall that the bank sent demand letters to Morris & Dickson on August 20, 2004), and suit was not filed until September 8, 2006. On March 31, 2008, the trial court sustained
 
 *1050
 
 the exception as to the claims against Morris & Dickson and the claims in Mr. Tumi-nello’s petition of intervention. The trial court reasoned that the letter authored by |4Mr. Dickson was “at best ... an agreement to place the bank on the check” and that the bank knew no later than June 2004 that that had not been done by Morris & Dickson. The court further determined that the failure of Morris & Dickson to perform as agreed was either negligent or intentional. Based on this conclusion, the court applied the one-year prescriptive period for torts and, finding that more than one year had elapsed before the filing of the suit on September 8, 2006, the court sustained the exception. This appeal ensued.
 

 DISCUSSION
 

 On appeal, First Louisiana challenges the ruling that its claim has prescribed, assigning the following errors:
 

 1. The trial court erred in finding the claim asserted by First Louisiana as to be one based on detrimental reliance as opposed to contract or conventional obligations.
 

 2. The trial court erred in sustaining the peremptory exception of prescription argument based on its classification of the claims of First Louisiana as a claim for damages due to the negligent or intentional conduct of Morris & Dickson.
 

 As second appellant, Mr. Tuminello adopts the arguments of First Louisiana, emphasizing the allegations in his petition of intervention characterizing his claim as breach of contract.
 

 The applicable prescriptive period is determined by the character of the action disclosed in the pleadings.
 
 Johnson v. Ledoux,
 
 42,090 (La.App.2d Cir.5/16/07), 957 So.2d 911,
 
 writ denied,
 
 07-1482 (La.10/5/07), 964 So.2d 946,
 
 citing Starns v. Emmons,
 
 538 So.2d 275 (La.1989). The nature of the basic underlying action determines the appropriate prescriptive ^period.
 
 Id., citing Fishbein v. LSU Health Sciences Center,
 
 04-2482 (La.4/12/05), 898 So.2d 1260. The same actions or omissions may constitute breaches of general duties as well as contractual duties, giving rise to causes of actions in tort and contracts.
 
 In re St. Louis Encephalitis Outbreak in Ouachita Parish No. 01-4224 all cases,
 
 41,250,
 
 et al,
 
 (La.App.2d Cir.9/1/06), 939 So.2d 563,
 
 writ denied,
 
 06-2527 (La.12/15/06), 945 So.2d 694. Further, a plaintiff may assert both actions and is not required to plead the theory of his case.
 
 Id.
 
 When a person negligently performs a contractual obligation, he has committed an active breach of contract which may also support an action in tort.
 
 Id.
 
 While we agree that any recovery in tort in the case
 
 sub judice
 
 would clearly be prescribed, we find that the allegations in the petitions of First Louisiana and Mr. Tuminello support potential claims of breach of contract.
 

 A contract is an agreement by two or more parties whereby obligations are created, modified or extinguished. La. C.C. art.1906. An obligation may be the promise to do or not to do something. Such obligation may be for benefit of a third party. La. C.C. art.1978. After reviewing the record in the case
 
 sub judice,
 
 including the pleadings, testimony and documentary evidence, we conclude that the claims of First Louisiana and Mr. Tuminello sound in contract. At a trial on the merits, if the letter authored by Mr. Dickson is found to constitute an agreement to obligate Morris
 
 &
 
 Dickson to perform an act,
 
 i.e.,
 
 include the bank as an additional payee on the check to MMS, which it failed to perform resulting |(iin damage to First Louisiana, there could be recovery for breach of that agreement.
 

 
 *1051
 
 In addition, we note that Morris & Dickson acknowledges in its brief that it is an “account debtor” under the provisions of the Uniform Commercial Code of not only MMS, but of First Louisiana. See La. R.S. 10:9-102(3). It argues, however, that it did not have the required, authenticated notification of the assignment to become obligated thereon pursuant to La. R.S. lO^-dOOCa).
 
 [1]
 
 See also La. R.S. 10:9-102(7). Arguably, the letter authored by Mr. Dickson acknowledges actual, albeit not authenticated, notice of the assignment of the debt, which would then call into play the requirement of subsection (a) that, once notice is established, “the account debtor [Morris & Dickson] may discharge its obligation by paying the assignee [First Louisiana] and
 
 may not
 
 discharge the obligation by paying the assignor [MMS].” (Emphasis added.) This discharge of obligation provision under the U.C.C. relates to the contractual obligations of Morris & Dickson as an account debtor and would be governed by the prescriptive period for contractual actions rather than actions in tort.
 

 While these are certainly factual questions to be determined on the merits of the case, we must conclude that the ruling that the claims have |7prescribed based on application of the one-year prescriptive period for torts was erroneous. An action on a contract is governed by the prescriptive period of ten years for personal actions.
 
 Johnson v. Unopened Succession of Alfred Covington, Jr.,
 
 42,488 (La.App.2d Cir.10/31/07), 969 So.2d 733; La. C.C. art. 3499. Since this ten-year period has clearly not run in the instant case, we must reverse the judgment sustaining the exception of prescription.
 

 DECREE
 

 For the foregoing reasons, the judgment of the trial court sustaining the exception of prescription is reversed and the matter is remanded to the trial court for further proceedings. Costs of appeal are assessed to Morris & Dickson Co., L.L.C.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . La. R.S. 10:9-406 provides, in pertinent part:
 

 (a) Discharge of account debtor; effect of notification. Subject to subsections (b) through (i) and R.S. 10:9-411, an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the as-signee and may not discharge the obligation by paying tire assignor.