GASKINS, J.
 

 bThe plaintiff, First Louisiana Bank (“First Louisiana”), and the plaintiff in intervention, Ronald Tuminello, appeal from a trial court judgment finding that the defendant, Morris & Dickson Company, LLC (“Morris & Dickson”), was not liable for losses resulting from the default on loans by Material Management Systems, Inc. (“MMS”), a company with whom Morris & Dickson did business. For the following'reasons, we affirm the trial court judgment.
 

 FACTS
 

 Morris & Dickson needed a package handling system for its warehouse. MMS was the low bidder and was chosen to install an Intertake Pallet Pick system. To facilitate the process, Morris & Dickson issued three purchase orders to MMS. One purchase order, # 031223-01, was for $249,853.47. A second purchase order, # 031223-02, the order at issue here, was for $196,450.50. The amount of the third purchase order was not specified.
 

 MMS was operated by Robert Eizel. MMS did not have the funds to purchase the system. Mr. Eizel approached Bank One, Bancorp South, and First Louisiana about obtaining financing. First Louisiana requested, as additional security, that the bank be included as additional payee on all payments made by Morris & Dickson to MMS.
 

 On January 15, 2004, Paul M. Dickson, vice-president of Morris & Dickson, wrote a “To Whom it May Concern” letter stating that:
 

 Payment for the above referenced purchase order issued to Material Management Systems will be made payable to Material Management Systems and First Louisiana Bank Attn: Ron Bou-dreaux.
 

 |2The purchase order referenced in the letter was # 031223-02, for $196,450.50. The letter does not specify an addressee. Morris
 
 &
 
 Dickson wrote similar letters to Bank One for purchase orders # 031223-01, # 031223-02, and # 031223-03 and to Bancorp South for # 031223-01 and # 031223-03. Bank One did not lend money to MMS; Bancorp South and First Louisiana did. The two loans from First Louisiana are at issue in this case.
 
 [1]
 

 The loans from First Louisiana were evidenced by promissory notes from MMS and Mr. Eizel to First Louisiana in the amounts of $50,070 and $65,072. Mr. Eizel signed as a guarantor on the loans. In order to secure the two loans, MMS also made assignments to First Louisiana of the contract purchase order from Morris & Dickson for $196,450.50. The assignments were filed in the Uniform Commercial Code Registry with the Louisiana Secretary of State.
 

 The intervenor, Ronald Tuminello, partnered with Mr. Eizel on previous business
 
 *819
 
 ventures. Mr. Tuminello signed as a guarantor on the loans from First Louisiana for this project. Mr. Eizel gave Mr. Tuminel-lo a promissory note for $100,000 to secure his signature as guarantor.
 

 MMS failed to complete the work on the warehouse and Morris & Dickson took over the project. MMS also defaulted on its loan to First Louisiana. In August 2004, First Louisiana sent a demand letter to Mr. Eizel to pay both notes. In June 2005, First Louisiana obtained a default judgment against MMS and Mr. Eizel in the amounts of $51,160.57 and |s$64,724.16, the sums due on the notes. MMS went out of business and Mr. Eizel filed for bankruptcy. However, his debt to First Louisiana on these notes was not discharged in bankruptcy.
 

 Mr. Tuminello, as guarantor of the loans, paid interest on the notes. In September 2005, First Louisiana sent a letter to Morris & Dickson inquiring about checks issued to MMS that did not include First Louisiana as an additional payee. The record contains a copy of a check issued on April 28, 2004, payable to MMS only, in the amount of $161,500.00. Another check issued on June 16, 2004 was for $50,000 and was payable to MMS and Ban-corp South. A third check for $50,000 was issued on April 12, 2004, payable only to MMS. The checks do not specify which purchase orders they were intended to pay.
 

 On September 8, 2006, First Louisiana filed suit against Morris & Dickson seeking to enforce the terms of the “To Whom it May Concern” letter. First Louisiana sought to recover “sums proven to be due for payments made toward purchase order # 031223-02, which were not made payable jointly” to First Louisiana and MMS.
 

 In May 2007, Mr. Tuminello filed a petition of intervention to recover payments made by Morris & Dickson for purchase order # 031223-02. In January 2008, Morris & Dickson filed a peremptory exception of prescription, arguing that First Louisiana and Mr. Tuminello were seeking to recover under the theory of detrimental reliance. First Louisiana and Mr. Tumi-nello contended that the loans and guaranty made to MMS were done in reliance on Morris & Dickson’s agreement to include First Louisiana as 14an additional payee on all checks to MMS. According to Morris & Dickson, First Louisiana was aware by 2004 that it was not included as an additional payee. Morris & Dickson contended that detrimental reliance is a tort and is subject to a one-year prescriptive period.
 

 In January 2008, the trial court held a hearing and concluded that the claims against Morris & Dickson had prescribed. First Louisiana and Mr. Tuminello appealed. In
 
 First Louisiana Bank v. Morris & Dickson Company, LLC,
 
 44,187 (La. App.2d Cir.4/8/09), 6 So.3d 1047, this court reversed the trial court, finding that the claim against Morris & Dickson was based on contract and not tort and was subject to the 10-year prescriptive period for contracts. The matter was remanded to the trial court for further proceedings.
 

 On remand, the trial court considered testimony and evidence adduced at the original hearing. Ron C. Boudreaux, president of First Louisiana, testified that there were two conditions for the loan to MMS. First, that the bank receive assignments of the purchase orders and second, that checks from Morris & Dickson for purchase order # 031223-02 be made payable to both MMS and First Louisiana.
 

 Paul Dickson of Morris & Dickson testified that he wrote the letter at issue here so that Mr. Eizel could get a loan from some financial institution. Similar letters were written to other banks. Mr. Dickson said that Mr. Eizel came to his office and
 
 *820
 
 they discussed the wording of the letters. Mr. Dickson said his expectation was that, if and when MMS got a loan, Morris & Dickson would be notified. Mr. Dickson stated that he specifically asked | BMr. Eiz-el to inform him whom to include on the payments if he got a loan. Further, Mr. Dickson said he expected that “if a bank extended these types of terms that I would get a phone call from the bank.”
 

 MMS obtained a loan from Bancorp South in addition to First Louisiana. Mr. Dickson said that Bancorp South contacted him and told him that it had loaned money to MMS and that Bancorp South should be included as a payee on checks to MMS. Mr. Dickson complied with that request. However, he stated that First Louisiana did not contact him and he did not know which banks lent money to MMS.
 

 On remand, a hearing was held in the trial court in September 2009. First Louisiana argued that the “To Whom it May Concern” letter was an accessory contract and a stipulation for a third party
 
 (stipulation pour
 
 autrui). According to First Louisiana, it acted upon Morris & Dickson’s representations in the letter. First Louisiana argued that there was no need for notice of the loan or formal acceptance of the terms of the letter.
 

 Mr. Tuminello contended that, by virtue of the letter at issue here, Morris & Dickson contracted to put First Louisiana on its checks to MMS as a payee. He argued that notice of a loan made to MMS by First Louisiana was not necessary. Mr. Tuminello maintained that Morris & Dickson breached its contract with First Louisiana. As guarantor of the loans made to MMS, Mr. Tuminello claimed that he was damaged by having .to pay $17,331.58 in interest on one loan and $21,786.28 in interest on the other loan.
 

 1 ^Morris & Dickson argued that it had no notice that First Louisiana had actually loaned money to MMS and had no obligation to include First Louisiana as a payee on the checks.
 

 The trial court found that Morris
 
 &
 
 Dickson authored the letter at issue here in an effort to help MMS obtain financing. Morris & Dickson was never notified that First Louisiana had issued credit based upon the letter. According to the trial court, notification to Morris & Dickson of the acceptance of the terms of the letter was essential to the formation of a binding agreement. The trial court determined that it could not hold Morris & Dickson liable. A judgment in favor of Morris & Dickson, rejecting the demands of First Louisiana and Mr. Tuminello, was signed by the trial court in December 2009. First Louisiana and Mr. Tuminello appealed.
 

 First Louisiana argues that the trial court erred in failing to find that an obligation existed on the part of Morris & Dickson to pay First Louisiana monies toward purchase order # 031223-02, pursuant to the letter issued by Morris & Dickson dated January 15, 2004. First Louisiana also claims that the trial court erred in finding that the bank and/or MMS were required to give notice to Morris & Dickson before the company was obligated to pay pursuant to its letter.
 

 The plaintiff in intervention, Mr. Tumi-nello, argues on appeal that the trial court erred by not applying the detrimental reliance provisions of La. C.C. art. 1967. He also argues that the trial court erred in finding that notice was required and/or was not given.
 

 IvCONTRACT AND NOTICE
 

 First Louisiana urges that the letter at issue here created a conventional obligation or contract between Morris & Dickson and First Louisiana once the bank
 
 *821
 
 accepted Morris & Dickson’s offer by making a loan to MMS. First Louisiana argues that the trial court erred in finding that express acceptance of the terms of the letter was required to form a contract between Morris
 
 &
 
 Dickson and the bank. First Louisiana contends that the “To Whom it May Concern” letter to the bank became an accessory contract to the principal contract between Morris & Dickson and MMS.
 

 First Louisiana also claims that the letter was a
 
 stipulation pour autrui.
 
 According to First Louisiana, the law does not provide for a particular form of acceptance or require an express acceptance of or consent to a
 
 stipulation pour autrui.
 

 Closely tied with the arguments concerning whether there was a binding agreement in this matter, First Louisiana maintains that the trial court erred in finding that either the bank or MMS was required to give notice to Morris & Dickson to create an obligation on the part of the company to include the bank as a payee on checks to MMS. First Louisiana contends that Morris & Dickson knew that MMS was seeking financing for the project and Morris & Dickson had actual knowledge that MMS was dealing with First Louisiana and Bancorp South. According to First Louisiana, the letter by Morris & Dickson did not require the bank to contact the company to trigger the obligation of including First Louisiana as |san additional payee on checks to MMS. These arguments are without merit.
 

 Legal Principles
 

 A contract is an agreement by two or more persons whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made. La. C.C. art. 1927.
 

 Unless otherwise specified by the offer or the law, an acceptance of a revocable offer, made in a manner and by a medium suggested by the offer or in a reasonable manner and by a reasonable medium, is effective when transmitted by the offeree. La. C.C. art. 1935. A medium or manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received, unless circumstances known to the offeree indicate otherwise. La. C.C. art. 1936.
 

 When an offeror invites an offeree to accept by performance and, according to usage or the nature or the terms of the contract, it is contemplated that the performance will be completed if commenced, a contract is formed when the offeree begins the requested performance. La. C.C. art. 1939.
 

 lflWhen commencement of the performance either constitutes acceptance or makes the offer irrevocable, the offeree must give prompt notice of that commencement unless the offeror knows or should know that the offeree has begun to perform. An offeree who fails to give the notice is liable for damages. La. C.C. art. 1941.
 

 When, because of special circumstances, the offeree’s silence leads the offeror reasonably to believe that a contract has been formed, the offer is deemed accepted. La. C.C. art. 1942.
 

 The court must find that there was a meeting of the minds of the parties to
 
 *822
 
 constitute consent. The existence or nonexistence of a contract is a question of fact not to be disturbed unless clearly wrong.
 
 Belin v. Dugdale,
 
 45,405 (La.App.2d Cir.6/30/10), 43 So.3d 272.
 

 On appeal, the reviewing court may not set aside a trial court’s findings in the absence of manifest error or unless they are clearly wrong. Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Even though the appellate court may feel that its own evaluations and inferences are more reasonable than those made by the trial court, reasonable evaluations of credibility and reasonable inferences of fact are not disturbed on appeal where conflicting testimony exists. To reverse a trial court’s factual determinations, the appellate court must find that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. When findings are based on determinations regarding credibility of a witness, the manifest | inerror-clearIy wrong standard demands great deference to the trier of facts’ findings.
 
 Belin v. Dugdale, supra.
 

 Discussion
 

 The trial court did not err in finding that the letter at issue here does not give rise to a binding contract between Morris & Dickson and First Louisiana. The letter was not addressed to First Louisiana or any other entity. It is a “To Whom it May Concern” letter agreeing to include First Louisiana as a payee on payments to MMS for purchase order # 031223-02. Another letter, covering this same purchase order as well as two other purchase orders, was also written concerning Bank One. A third letter was written concerning Bancorp South and purchase orders # 031223-01 and # 031223-03. If these letters, without notice of acceptance of the terms, created a contract, then Morris & Dickson would have been required to include not only First Louisiana, but also Bank One on any checks issued to MMS for purchase order # 031223-02. We find that this is not the case. The letter was an offer that required acceptance and communication of that fact to Morris & Dickson in order to form a contract.
 

 Under La. C.C. art. 1927, unless the law prescribes a certain formality for a contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. While no formality was required by law for the alleged agreement at issue here, there was no communication of acceptance by First Louisiana orally, in writing, or by action or inaction which, under the circumstances was clearly indicative of consent.
 

 |nLa. C.C. arts. 1935 and 1936 provide that acceptance must be made in a manner and by a medium suggested by the offer or in a reasonable manner and by a reasonable medium. A medium or manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received. First Louisiana argued that the mere fact that it made a loan to MMS was sufficient to convey acceptance of the offer made by Morris & Dickson to include the bank as an additional payee on checks to MMS for purchase order # 031223-02. The offer was made in writing and First Louisiana did not provide written acceptance to Morris & Dickson. There is also no showing that simply making a loan to MMS would have constituted customary acceptance in such transactions.
 

 First Louisiana argues that it conveyed its acceptance by performance in making the loan or by its silence. The
 
 *823
 
 facts of this case, measured against the Louisiana Civil Code provisions, do not support this argument. La. C.C. art. 1939 specifies that a contract is formed when an offeree begins the requested performance if the offeror invites acceptance by performance and it is contemplated that performance will be completed if commenced. However, La. C.C. art. 1941 states that when commencement of performance constitutes acceptance, the offeree must give prompt notice of the commencement unless the offeror knows or should have known that the offeree has begun performance.
 

 In this case, the letter at issue does not show that Morris & Dickson invited acceptance by performance and First Louisiana did not give prompt | i2notice to Morris & Dickson of the loan to MMS. Paul Dickson testified that Morris & Dickson did not know which financial institutions, if any, gave loans to MMS. Under these facts, MMS could have gotten financing from Bank One or First Louisiana, or could have secured financing from some other source unknown to Morris & Dickson. These circumstances do not show that Morris & Dickson knew or should have known that First Louisiana had begun to perform by making loans to MMS.
 

 Further, First Louisiana’s silence did not constitute acceptance of an alleged offer by Morris
 
 &
 
 Dickson. La. C.C. art. 1942 provides that an offer is deemed accepted when, because of special circumstances the offeree’s silence leads the of-feror reasonably to believe that a contract has been formed. In this matter, there is no showing of special circumstances that would have caused silence by First Louisiana to lead Morris & Dickson to reasonably believe that a binding agreement had been formed. As stated above, several letters were issued concerning different lenders. Only Bancorp South gave notice to Morris & Dickson that a loan had been made to MMS. Once Morris & Dickson was informed of Bancorp South’s acceptance of the offer, the company included Bancorp South as an additional payee on checks concerning the purchase orders financed by that bank.
 

 First Louisiana contends that the “To Whom it May Concern” letter was an accessory contract to the loan agreement. La. C.C. art. 1913 provides:
 

 A contract is accessory when it is made to provide security for the performance of an obligation. Suretyship, mortgage, pledge, jisand other types of security agreements are examples of such a contract.
 

 When the secured obligation arises from a contract, either between the same or other parties, that contract is the principal contract.
 

 Had there been an enforceable agreement between First Louisiana and Morris & Dickson, it would have been an accessory contract. As discussed above, because First Louisiana failed to communicate acceptance to Morris & Dickson, there was no contract, accessory or otherwise.
 

 The facts of this case fail to establish the existence of a
 
 stipulation pour autrui.
 
 La. C.C. art. 1978 provides:
 

 A contracting party may stipulate a benefit for a third person called a third party beneficiary.
 

 Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary’s agreement.
 

 A
 
 stipulation pour autrui
 
 is never presumed. Rather, the intent of the contracting parties to stipulate a benefit in favor of a third party must be made manifestly clear. Additionally, to establish a
 
 stipulation pour autrui,
 
 the third party relation
 
 *824
 
 ship must form the consideration for a condition of the contract and the benefit may not be merely incidental to the contract. The party demanding performance of an obligation pursuant to a
 
 stipulation pour autrui
 
 bears the burden of proving the existence of this obligation. Third parties can be the beneficiaries of the stipulation as long as they are determinable on the day on which the agreement is to have effect for their benefit.
 
 Hudson v. Progressive Security Insurance Company,
 
 43,857 (La.App.2d Cir.12/10/08), 1 So.3d 627,
 
 unit denied,
 
 2009-0235 (La.3/27/09), 5 So.3d 148. See also
 
 Boyte v. Louisiana Ag Credit PCA
 
 39,569 (La.App.2d Cir.4/6/05), 899 So.2d 765.
 

 The trial court did not err in finding that notice of acceptance of the offer contained in the letter at issue here was necessary for the formation of a binding agreement between Morris & Dickson and First Louisiana. Because there was no showing that First Louisiana ever communicated acceptance of the offer, the trial court did not err in finding that no contract was formed between these parties. Further, if a
 
 stipulation pour autrui
 
 in favor of First Louisiana was intended by Morris & Dickson and MMS, there is no showing that First Louisiana manifested its intent to avail itself of the benefit.
 

 Also, regarding the issue of notice, the record shows that MMS made assignments of purchase order # 031223-02 to secure the two loans made by First Louisiana. The bank made the necessary UCC registration of the assignments with the Louisiana Secretary of State’s office. However, there was no showing of notice for Morris & Dickson to make payments to First Louisiana as the assignee. La. R.S. 10:9-406 provides in pertinent part:
 

 (a) Discharge of account debtor; effect of notification. Subject to subsections (b) through (i) and R.S. 10:9-411, an account debtor on an account, chattel paper, or a payment intangible may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor. [Emphasis supplied.]
 

 11sThe result in this case is determined solely by the distinct facts presented here. The circumstances and timing of the Morris & Dickson letter are significant in the outcome of this matter. The letter was clearly written at a time when MMS and Mr. Eizel were attempting to obtain financing from various banks. Under these facts, First Louisiana should have communicated to Morris & Dickson its acceptance of the offer in the letter and First Louisiana’s performance by loaning money to MMS. The result in this case may have been different if the letter had been written at a different time in the loan process.
 

 DETRIMENTAL RELIANCE
 

 Mr. Tuminello argues on appeal that the trial court erred in not applying the detrimental reliance provisions of La. C.C. art. 1967. He contends that Morris & Dickson knew that First Louisiana would not loan money to MMS without assurance from Morris & Dickson that it would make payments jointly to MMS and the bank. Mr. Tuminello claims that he would not have entered into the continuing guaranty agreement without the assurances of Morris & Dickson contained in the letter at issue here. He urges that notice is not required for detrimental reliance. He asserts that Morris & Dickson made a repre
 
 *825
 
 sentation that he was justified in relying upon and that he changed his position to his detriment because of that reliance. This argument is without merit.
 

 Legal Principles
 

 La. C.C. art. 1967 provides:
 

 Cause is the reason why a party obligates himself.
 

 LfiA party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee’s reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
 

 The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representation, or silence.
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 2004-1459 (La.4/12/05), 907 So.2d 37;
 
 Belin v. Dugdale, supra.
 

 The focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.
 
 Suire v. Lafayette City-Parish Consolidated Government, supra.
 

 To recover under the theory of detrimental reliance, a plaintiff must prove the following three elements by a preponderance of the evidence: (1) a representation by conduct or work; (2) justifiable reliance thereon; (3) a change in position to one’s detriment because of the reliance.
 
 Belin v. Dugdale, supra.
 

 It is difficult to recover under the theory of detrimental reliance because estoppel is not favored in Louisiana law. Claims of detrimental reliance must be examined strictly and carefully.
 
 Northside Furniture of Ruston, Inc. v. First Tower Loan, Inc.,
 
 43,736 (La.App.2d Cir.12/3/08), 999 So.2d 151;
 
 Belin v. Dugdale, supra.
 

 117Piscussion
 

 We must first address the question of whether Mr. Tuminello’s claim for detrimental reliance is properly before this court on appeal. In the trial court, Mr. Tuminello argued that he was damaged by the breach of an alleged contract between Morris & Dickson and First Louisiana to include the bank as an additional payee on checks to MMS. On remand, the trial court stated that the previous opinion of this court, denying the exception of prescription, held that any claims of detrimental reliance would have been prescribed. Therefore, the trial court’s reasons for judgment on remand do not consider the merits of detrimental reliance.
 

 Morris & Dickson contends that detrimental reliance is based in tort and that the prior decision of this court found that any detrimental reliance claims in this case had prescribed. To the contrary, this court’s prior opinion held that any tort claims which might be involved in the case had prescribed but that the claims presented were based in contract. Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. An action on a contract is governed by the prescriptive period of 10 years for personal actions. La. C.C. art. 3499;
 
 Trinity Universal Insurance Company v. Horton,
 
 33,157. (La.App.2d Cir.4/5/00), 756 So.2d 637. The correct prescriptive period to be applied in any action depends upon the nature of the action; it is the nature of the duty breached that should
 
 *826
 
 determine whether an action is in tort or in contract.
 
 Trinity Universal Insurance Company v. Horton, supra.
 
 The classical distinction between “damages ex contrac-tu” and “damages ex delicto” is that the former flow ]18from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to all persons.
 
 Harrison v. Gore,
 
 27,254 (La.App.2d Cir.8/23/95), 660 So.2d 563,
 
 unit denied,
 
 95-2347 (La.12/8/95), 664 So.2d 426.
 

 In the Louisiana Civil Code revision of 1984, La. C.C. art. 1967, which concerns cause and detrimental reliance, was enacted. This article is contained in that portion of the Louisiana Civil Code dealing with contracts. In Saul Litvinoff,
 
 Still Another Look at Cause,
 
 48 La. L.Rev. 3 (1987), construing La. C.C. art. 1967, the author states that “the new article of the Louisiana Civil Code subtracts induced reliance from the quasi-delictual field and places it where it belongs, in contract.”
 

 We also note that the jurisprudence holds that claims for detrimental reliance arising out of contracts are not subject to the one-year prescriptive period for torts. See
 
 Babkow v. Morris Bart, P.L.C.,
 
 1998-0256 (La.App. 4th Cir.12/16/98), 726 So.2d 423. Therefore, Mr. Tuminello’s detrimental reliance claim, based upon an alleged contract, has not prescribed.
 

 However, we find that Mr. Tumi-nello failed to carry his burden of proving a claim for detrimental reliance in this matter. In the present case, Mr. Tuminel-lo argues that he would not have signed as a guarantor on the loan from First Louisiana to MMS without the assurance that Morris & Dickson would include the bank as a payee on all checks issued to MMS for payment of the purchase order at issue here. Under the facts presented, we do not find that Mr. Tuminello was justified in his reliance on the “To Whom it May Concern” letter. No promises were made to Mr. Tuminello 119and no representation was made by Morris & Dickson in such a manner that the company should have expected Mr. Tuminello to rely upon it. The facts simply do not support the argument that the letter at issue here induced Mr. Tuminello to sign as a guarantor. Therefore, no claim for detrimental reliance has been proved in this case.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the decision of the trial court rejecting the claims of First Louisiana Bank and Ronald Tuminello against the defendant, Morris & Dickson Company, LLC. Costs in this court are assessed one-half to First Louisiana and one-half to Mr. Tuminello.
 

 AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, WILLIAMS, GASKINS, PEATROSS and MOORE, JJ.
 

 Rehearing denied.
 

 BROWN, J., would grant rehearing.
 

 [1]
 

 . First Louisiana is now Community Trust Bank, but will be referred to as First Louisiana herein.