726 So.2d 423 (1998)
Grant M. BABKOW, D.C.
v.
MORRIS BART, P.L.C.
No. 98-CA-0256
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1998.
*424 Pamela Brookey Lolan, New Orleans, La, For Plaintiff/Appellant.
Glenn Lieberman, Morris Bart, P.L.C., New Orleans, La, For Defendent/ Appellee.
Court composed of Judge DENIS A. BARRY and Judge JOAN BERNARD ARMSTRONG and Judge STEVEN R. PLOTKIN and Judge MOON LANDRIEU and Judge JAMES F. McKAY.
STEVEN R. PLOTKIN, Judge
The sole issue in this appeal is whether the trial court judge properly applied the three-year prescriptive period relative to open accounts to an obligation arising out of a law firm's letter to a chiropractor assuring the protection of the chiropractor's "charges" for a client's chiropractic treatment out of anticipated settlement proceeds. Finding that the letter was a suretyship, the trial court sustained an exception of prescription in favor of the law firm, applying the three-year prescriptive period established by La. C.C. art. 3494 for suits on open accounts, based on the provisions of the La. C.C. art. 3060, which states that "prescription on the principle obligation extinguishes the obligation of the surety." Finding that the letter does not constitute a suretyship, we reverse the judgment dismissing the chiropractor's suit and remand to the trial court for further proceedings consistent with this decision.

I. Facts

Plaintiff, Grant M. Babkow, D.C., allegedly provided chiropractic services totaling $4,465 to Wallace Lane, a client of defendant Morris Bart, P.L.C.,[1] between March 26, 1992 and October 27, 1992. On March 31, 1992, five days after Mr. Lane's initial treatment with Dr. Babkow, the Morris Bart law firm sent a letter to Dr. Babkow, which stated as follows:
Please be advised that we represent Wallace Lane for an accident which occurred on December 10, 1991.
Please be assured that we shall protect your charges out of any net settlement or proceeds obtained in this matter which is related to the accident of December 10, 1991.
We appreciated your extending this cooperation with our office and we will attempt to work with you in every way and manner possible.
The letter was signed by Kim Stevenson, Legal Assistant.[2]
Dr. Babkow claims that he contacted the Morris Bart law firm "numerous" times over the next few years, making sure that the Morris Bart law firm was aware of his ensuing address change. On June 10, 1996, Dr. Babkow reportedly received a check for *425 $2,200 without accompanying correspondence.
Two days later, on June 12, 1996, Dr. Babkow received by facsimile correspondence from the Morris Bart law firm purporting to explain the disbursement of settlement funds. The letter explained that the defendants in the personal injury action had obtained a surveillance videotape which "seriously damaged Mr. Lane's case," then stated, in pertinent part, as follows:
A decision was made to accept a settlement offer which required drastic reductions in the charges and fees of all parties involved, including this office. Specifically, the attorney's fee was reduced by almost 60%. Of all of the medical providers, you were the only one who was paid for their services. All other medical providers wrote off their expenses.
The letter was signed by Wade Kee, Attorney at Law.
Dr. Babkow responded with a bill for the balance due on the account. Citing the March 31, 1992 letter quoted above, plus the fact that Mr. Lane had personally received more than $25,000, Dr. Babkow informed the Morris Bart law firm of his belief that he was due the balance on the account, totaling $2,265. Dr. Babkow also pointed out that no prior discussion concerning reduction of the charges had been attempted.
When the Morris Bart law firm failed to respond, Dr. Babkow contacted an attorney, who sent a demand letter to the firm, then filed the instant suit on December 18, 1996. The Morris Bart law firm answered on March 27, 1997, the day after Dr. Babkow had filed a motion for default. Subsequently, the Morris Bart law firm filed an exception of prescription, which was sustained; Dr. Babkow's suit was dismissed. Dr. Babkow appeals.

II. Classification of obligation

Determination of the proper prescription period to be applied in this case depends on characterization of the obligation created by the letter quoted above, which was sent by the Morris Bart law firm to Dr. Babkow. The trial court found that the letter created a suretyship, which is defined by La. C.C. art. 3035 as "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." Under the provisions of La. C.C. art. 3060, "[p]rescription of the principal obligation extinguishes the obligation of the surety." The principal obligation in this case is an open account, which is subject to a three-year prescriptive period under the provisions of La. C.C. art. 3494(4).

A. Suretyship

On appeal, Dr. Babkow's primary argument is that the trial court improperly found that the obligation created by the letter written by the Morris Bart law firm was a suretyship agreement. We agree. In fact, that exact issue was raised in Morehouse Parish Hospital Service District v. Pettit, 25,396 (La.App. 2 Cir. 1/19/94), 630 So.2d 1338, writ denied, 94-0449 (La.4/7/94), 635 So.2d 1135, involving a letter from an attorney to a client's medical provider, similar to the letter at issue in the instant case. In that case, the attorney requested that the medical provider forebear prosecution of its claim against the client pending an expected recovery from the doctor whose alleged malpractice caused the client's health problems. Id. The attorney's letter then stated as follows: "The bills of [the medical provider] have been included in those claims and we will certainly pay them as soon as any recovery has been made." Id. at 1340. When the client's suit settled, the bills of the medical provider were not paid; the medical provider filed suit.
The appellate court deciding the Pettit case failed to address the trial court's finding that the letter did not constitute a suretyship agreement, finding instead that the attorney's offer made in the letter was not accepted by the medical provider, who responded to the letter with a request for a promissory note. Id. The appellate court also found that the attorney had not "personally obligated himself as a result of the language" in the letter. Id. at 1342. That finding was based, however, on the intent of the parties to the case. The medical provider had answered the attorney's letter with correspondence indicating its understanding that the client *426 would pay the bill "as soon as recovery has been made." Id.
Close examination of the letter in question in the instant case in light of the definition of "suretyship" established by La. C.C. art. 3035 reveals the error in the trial court's finding that the letter constituted a suretyship. In fact, the Morris Bart law firm admitted in oral argument before this court that the letter was not a suretyship. We agree. The Morris Bart law firm's letter did not constitute a promise "to fulfill the obligation of another upon the failure of the latter to do so." In fact, the letter says nothing whatsoever about the client paying the chiropractor's bill. The letter at issue in this case specifically promises that the law firm would "protect" the chiropractor's charges out of the expected settlement proceeds. The obvious intent of the letter is to insure the chiropractor that his charges will eventually be paid by the attorney, albeit from the settlement proceeds. In return for that promise, the Morris Bart law firm hoped to receive exactly what it receivedthe chiropractor's forbearance from pursuing payment of the debt from the client.
Although we agree with the trial court's finding in the Pettit case that letters from attorneys to medical providers promising to pay bills out of settlement proceeds or other money recovered as a result of litigation do not constitute suretyship agreements, we hold that, under the circumstances of the instant case, the Morris Bart law firm did promise to "protect" payment of the client's chiropractor bills. This conclusion is based on the intent of the parties, as demonstrated by Dr. Babkow's forbearance of the debt until after the settlement proceeds were distributed, and on an important fact which clearly distinguishes the attorney's obligation in this case from the attorney's obligation in the Pettit case.
In the Pettit case, the letter from the attorney was written after the medical expenses had already been incurred by the client. However, in the instant case, the letter was written just five days after the client's first visit to Dr. Babkow's office; Dr. Babkow actually provided the services performed subsequent to his receipt of the letter in reliance on the promise of the Morris Bart law firm to pay the charges for those services. In fact, Dr. Babkow's medical services were received by the client more than 50 times after the receipt of the letter despite the fact that Dr. Babkow never received any payment, and apparently never sought payment, from the client. In the first two to three months after his receipt of the letter, Dr. Babkow provided services several times a week, sometimes daily.

B. Contract law

Following an exhaustive search of Louisiana law and applicable jurisprudence, we believe that the allegations of Dr. Babkow's petition, coupled with the record evidence, are sufficient to defeat the Morris Bart law firm's exception of prescription. This finding is based on the fact that the allegations and record evidence indicate that Dr. Babkow may be able to prove that the obligation created by his acceptance of the offer made in the letter written by the Morris Bart law firm constitutes a contract. Although no Louisiana cases have previously characterized such an obligation, the allegations and evidence in the record, combined with the argument of counsel, indicates that all of the elements of a contract are present.

1. Elements of a contract

Four elements are necessary for formation of a contract in Louisiana: (1) capacity, (2) consent, (3) certain object, and (4) lawful cause. See Leger v. Tyson Foods, Inc., 95-1055 (La.App. 3 Cir. 1/31/96), 670 So.2d 397, writ denied, 96-0545 (La.4/19/96), 671 So.2d 920. Certainly both the Morris Bart law firm and Dr. Babkow had capacity to contract. Moreover, despite the fact that Dr. Babkow apparently did not answer the letter, the record indicates that Dr. Babkow can prove that the parties freely gave their mutual consent to be bound. Dr. Babkow's acceptance of the offer made by the Morris Bart law firm to pay the debt of the client can be assumed from his silence since that silence should have led the Morris Bart law firm to believe that a contract had been formed. See Anesthesia East, Inc. v. Bares, 594 So.2d 1085, 1087 (La.App. 4 Cir.1992). *427 Further, a certain object existed because the object of the agreement was the chiropractic expenses incurred by Dr. Babkow's treatment of Mr. Lane.

2. Detrimental reliance

Moreover, the record indicates that Dr. Babkow can prove that lawful cause, which is a element necessary for formation of a contract under La. C.C. art.1966, exists because of Dr. Babkow's detrimental reliance on the promise of the Morris Bart law firm assuring the payment of Mr. Lane's chiropractic expenses out of "any net settlement or proceeds" obtained in the matter. Under the detrimental reliance doctrine established by Louisiana law, a party is permitted to recover economic harm whenever "the defendant made a representation by word or conduct upon which the plaintiff justifiably relied and because of which plaintiff changed his position to his detriment." Maraist, Louisiana Tort Law §20-1, p. 446 (Charlottesville, VA: Michie Law Publishers, 1996). The detrimental reliance doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." Orr v. Bancroft Bag, Inc., 29,046 (La.App. 2 Cir. 1/22/97), 687 So.2d 1068, 1070; Andrus v. Andrus, 93-856 (La.App. 3 Cir. 3/2/94), 634 So.2d 1254, 1258.
"Cause" is defined by La. C.C. art. 1967 as "the reason why a party obligates himself." La. C.C. art.1967 goes on to provide for the establishment of cause by showing detrimental reliance, stating, in pertinent part, as follows:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise.
In order to prove the existence of cause based on detrimental reliance, a party must establish three elements: (1) representation by conduct or word, (2) justifiable reliance in representation, and (3) change in position to detriment because of reliance. Orr, 687 So.2d at 1070; Andrus, 634 So.2d at 1258. See also Academy Mortgage Co., L.L.P. v. Barker, Boudreaux, Lamy & Foley, 96-0053 (La.App. 4 Cir. 4/24/96), 673 So.2d 1209, 1211. These elements must be proved by a preponderance of the evidence. Law v. City of Eunice, 94-1312 (La.App. 3 Cir. 4/5/95), 653 So.2d 149. The Morris Bart law firm does not contest the existence of the representation. Thus, the only remaining questions on this issue are whether Dr. Babkow can prove that he justifiably relied on the promise and that he changed his position to his detriment because of that reliance.
The record evidence indicates that Dr. Babkow will have little trouble proving that he relied upon the promise made in the Morris Bart law firm's letter assuring him of payment of the chiropractic expenses out of settlement proceeds. In reliance on that promise, Dr. Babkow failed to pursue payment of the expenses either from Mr. Lane or from the Morris Bart law firm. At the same time, Dr. Babkow claims, he took all the necessary steps to keep the Morris Bart law firm apprised of his address change, and otherwise indicated his expectation that the expenses would be paid in the event of a settlement, by contacting the office numerous times to check the status of the litigation.
The more difficult question is whether the record indicates that Dr. Babkow's reliance on the promise was reasonable. This factor is apparently the focus of the Morris Bart law firm's argument that detrimental reliance does not apply to the instant case. The Morris Bart law firm repeatedly asserted in oral argument that Dr. Babkow had a responsibility to protect his interest by taking advantage of the lien statutes, rather than simply relying on the promise in its letter. Unfortunately, few Louisiana cases on this issue exist. However, this court's recent opinion in Academy Mortgage, which was decided on facts somewhat similar to those in the instant case, is instructive on this issue.
The Academy Mortgage case involved a claim by a automobile lender, who sued the borrower's attorney seeking recovery of loan proceeds advanced to the borrower after the *428 lender received a letter from the attorney assuring that the loan would be paid out of settlement proceeds. In that case, the court found that the lender's reliance on the following statement in a letter from the attorney to the lender was not justifiable:
I am instructed by my client, Patricia Johnson, to pay to you the balance owned [sic] on the mortgage of her car that you recently financed for her out of her personal injury settlement, or whatever amount she nets out of her settlement.
I will abide by this instruction.
Although this court found in Academy Mortgage that the lender's reliance on the attorney's representation was not reasonable, that decision is extremely fact sensitive, based almost exclusively on the court's focus on the financial acumen of the plaintiff, as well as the unique wording of the letter in question. The court stated as follows:
Academy is not a unsophisticated consumer, in an inferior bargaining position relative to [the client] or [the attorney]. An entity engaged in the business of lending money for profit, Academy is required to know the basic legal tenets for an enforceable repayment agreement. The letter allegedly relied upon merely stated that [the attorney] will follow his client's instructions to withhold a sum when settlement is received; the implication is obvious that [the client's] instructions could change. Therefore, it was not reasonable for a commercial lender to rely on this writing, rather than obtaining an assignment of claim or other form of guarantee, in extending credit. Additionally, although Academy asserts that it approved [the client's] loan because it believed repayment would be made from her personal injury settlement, it was shown at trial that suit on the debt was filed, and a default judgment obtained, even before those funds were received by [the attorney]. That judgment's recognition of Academy's security interest in the purchased vehicle suggests, at the least, that Academy did not place total reliance on [the attorney's] alleged assurance.
Id. at 1212. The court later notes that "a promisee's business acumen is properly considered when determining reasonableness of the claimed reliance." Id.
The instant case is factually distinguishable from the Academy Mortgage case. First, the plaintiff is not a "commercial lender," but a chiropractor. Certainly the record as it stands contains no evidence that Dr. Babkow had any particular business acumen. Second, the Morris Bart law firm's letter is materially different from the letter at issue in Academy Mortgage. The letter in that case referred twice to the attorney's intention to follow his client's instructions, which, as the court notes, can obviously change. However, the letter at issue in the instant case never refers to the client, but simply assures Dr. Babkow that the law firm will "protect" his charges out of anticipated settlement funds. Moreover, the letter refers to Dr. Babkow's extending "cooperation" to the law firm office, not to the client. Third, the record evidence indicates that Dr. Babkow did rely on the promise both by allowing Mr. Lane to incur unpaid chiropractic expenses and by not taking any action to collect the debt prior to dispersal of the settlement proceeds, unlike the lender in Academy Mortgage who filed suit on the underlying obligation. In fact, Dr. Babkow so relied on the professional integrity of the Morris Bart law firm that he allowed the three-year prescriptive period to pass without taking legal action.
The final element which Dr. Babkow must prove in order to establish a claim in detrimental reliance is a change in his position to his detriment in reliance on the defendant's representation. In order for a plaintiff to prove that he changed his position to his detriment in reliance on a representation from another party, Louisiana courts require proof that the plaintiff suffered damages not adequately compensated by the defendant. See Autin's Cajun Joint Venture v. Kroger Co., 93-0320 (La.App. 1 Cir. 2/16/94), 637 So.2d 538, 543, writ denied, 94-0674 (La.4/29/94), 638 So.2d 224. The record indicates that Dr. Babkow will be able to prove damages since the Morris Bart law firm does not contest the fact that Dr. Babkow received only $2,200 on Mr. Lane's $4,465 chiropractic bills, leaving a balance of $2,265.

*429 III. Proper Prescriptive Period

A court's attitude to be applied when determining preemptory exceptions, including exceptions of prescription, has recently been summarized as follows:
The Louisiana Supreme Court has directed that a court should resolve doubts about a peremptory exception by overruling the exception and giving the litigant its day in court. Woodlawn Park Ltd. Partnership v. Doster Const. Co., Inc., 623 So.2d 645 (La.1993); Teachers Retirement System of La. v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La. 1984). Prescriptive statutes are strictly construed against prescription, and in favor of the obligation sought to be extinguished. With two possible constructions, the one that favors maintaining, as opposed to barring, an action should be adopted. Bustamento v. Tucker, 607 So.2d 532 (La.1992).
Commercial College v. Williams, 28,546 (La. App. 2 Cir. 8/21/96), 679 So.2d 509, writ denied, 96-2364 (La.12/6/96), 684 So.2d 927.
An action for breach of contract is subject to the 10-year prescriptive period established by La. C.C. art. 3499 for personal actions. See Gendusa v. City of New Orleans, 93-1527 (La.App. 4 Cir. 2/25/94), 635 So.2d 1158, 1161, writ denied, 94-1508 (La.9/23/94), 642 So.2d 1296. Even assuming that the prescriptive period began to run on the day the Morris Bart law firm sent the letter to Dr. Babkow on March 31, 1992, the suit, which was filed on December 18, 1996, was filed well within the applicable 10-year prescriptive period for contracts. If Dr. Babkow is successful on remand in proving the necessary elements of a contract, including his detrimental reliance on the representations of the Morris Bart law firm, the exception of prescription should be denied.
Although we believe that Dr. Babkow will be able to prove on remand that his acceptance of the promise made in the Morris Bart law firm letter constituted a contract under Louisiana law, we note that Louisiana law allows a party to recover under the doctrine of detrimental reliance even if no formal, valid, or enforceable contract existed. Morris v. People's Bank & Trust Co., 580 So.2d 1029 (La.App. 3 Cir.), writ denied, 588 So.2d 102 (La.1991). Moreover, at least one case indicates that a defendant who takes actions or makes statements to lull the plaintiff into a "false sense of security" is estopped from pleading prescription. See, e.g., Fontenot v. Houston General Insurance Co., 467 So.2d 77 (La.App. 3 Cir.1985). Generally, the defendant must engage in words or actions which "are designed to and which prevent the timely filing of a suit" for estoppel to lie. Tassin v. Allstate Insurance Co., 310 So.2d 680, 686 (La.App. 4 Cir.), writ denied, 313 So.2d 836 (La.1975). Those cases might prove applicable depending on the facts presented by Dr. Babkow on remand.

Conclusion
The trial court's judgment sustaining the exception of prescription in the instant case is based on the trial court's finding that the letter in question constituted a suretyship agreement which prescribed upon extinguishment of the underlying obligation. That finding was based on the argument of the Morris Bart law firm; the law firm has now admitted that the letter does not constitute a suretyship agreement. The record indicates that Dr. Babkow may be able to prove that his acceptance of the letter resulted in a contract, formed by his detrimental reliance. Accordingly, the trial court judgment sustaining the exception of prescription in favor of the Morris Bart law firm is reversed. The case is remanded for other proceedings consistent with this opinion. All costs of these proceedings are assessed to appellee, the Morris Bart law firm.
REVERSED AND REMANDED.
ARMSTRONG, J., CONCURS IN THE RESULT.
LANDRIEU, J., CONCURS IN THE RESULT.
McKAY, J., DISSENTS.
LANDRIEU, J., CONCURRING IN THE RESULT
I find neither a suretyship nor a contract, but I do conclude that La. C.C. art. 1967 *430 provides a basis for plaintiff to assert a claim against defendant for the damages he sustained.
Plaintiff claims defendant made a promise to protect plaintiff's fee so that neither the defendant nor the client would have to pay for the services as payment would ordinarily have become due. Plaintiff was reasonable in relying on that promise at least to the extent of the client's monetary recovery and plaintiff was damaged by his reliance.
Prescription did not start to run until the date plaintiff was advised of the settlement and the fact that his fees had not been protected.
McKAY, J. Dissenting.
I respectfully dissent with the majority opinion in this case. I would affirm the trial court's maintaining of the defendant's exception of prescription. It is my opinion that the letter from the Morris Bart law firm to Dr. Babkow created a suretyship. Accordingly when the underlying obligation (the patient's debt on open account) prescribed, the suretyship also fell.
According to Civil Code Article 3035: "Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." In the instant case, the principal obligation is that owed by the patient to pay the doctor for his chiropractic services. The letter from the Morris Bart law firm to Dr. Babkow stated that it would "protect (Dr. Babkow's) charges out of any settlement or proceeds obtained in the matter..." Any settlement in this case would belong to the client and not the Morris Bart law firm. The law firm merely acted as a guarantor for the debt of its client. This is a classic example of suretyship; it is the binding of one to fulfill the obligation of another. The majority opinion implicitly recognizes this in the first sentence under the heading of Detrimental reliance when it states that "the Morris Bart law firm assur(ed) the payment of Mr. Lane's chiropractic expenses out of `any net settlement or proceeds' obtained in the matter".
For these reasons, I believe that the trial court did not err in finding that a suretyship existed and would affirm its judgment.
NOTES
[1] Although the named defendant in this suit is Morris Bart, P.L.C., the record indicates that the proper defendant would have been Morris Bart and Associates, a separate legal entity from Morris Bart, P.L.C. The defendant notes this problem in brief, but apparently has not formally raised the issue by exception. To avoid confusion, the title "the Morris Bart law firm" will be used when referring to the defendant.
[2] The parties do not dispute that Kim Stevenson had the legal authority to contract on behalf of the Morris Bart law firm.