# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 15-111

STATE OF LOUISIANA

VERSUS

**MURPHY CORMIER GENERAL CONTRACTORS, INC.**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-656 DIVISION D
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED. Amy J., concurs in the result an assigns reasons.

Taylor, Porter, Brooks & Phillips L.L.P.
Harry J. Phillips, Jr.
Amy C. Lambert
Vincent V. Tumminello, III
P.O. Box 2471
Baton Rouge, LA  70821-2471
(225) 387-3221
ATTORNEYS FOR APPELLANT:
    State of Louisiana

Lundy, Lundy, Soileau & South LLP
Hunter W. Lundy
Rudie R. Soileau
Jackey W. South
Daniel A. Kramer
P.O. Box 3010
Lake Charles, LA  70602-3010
(337) 439-0707

**ATTORNEYS FOR DEFENDANT/APPELLEE:**
    Murphy Cormier General Contractors, Inc.

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This matter was previously decided by this court in *Murphy Cormier General Contractor, Inc. v. State of Louisiana, Dep't. of Health & Hospitals*, 12-1000, pp. 1-2 (La.App. 3 Cir. 5/22/13), 114 So.3d 567, 571-72 *writ denied*, 13-1491 (La. 11/1/13), 125 So.3d 430 wherein we set forth the facts and procedural history of the case:

> MCGC manufactures, sells, and installs residential and commercial mechanical sewage treatment plants in Calcasieu and surrounding parishes. In July 2007, MCGC filed a petition for damages and injunctive and declaratory relief against DHH and four of its employees, Dr. Jimmy Guidry, Glenn Cambre, Dane Thibodeaux, and Stanley Clause (collectively Defendants). MCGC claimed that it relied on the representation of Dr. Guidry that the revised regulations regarding residential mechanical sewage treatment plants, found in the Louisiana Sanitary Code, would not go into effect until March 31, 2001. Instead, MCGC claimed that Defendants prohibited the installation of sixty-eight residential sewage treatment plants beginning March 1, 2001, resulting in economic loss to the business. MCGC further alleged that DHH selectively enforced the new provisions, granting its competitors approval to sell and install sewer treatment plants that were not compliant with the new regulations. MCGC also claimed that DHH placed unreasonable requirements on its commercial mechanical sewage treatment plants that were contrary to law and negatively impacted [its] business.
>
> In September 2007, DHH filed a declinatory exception of improper venue, urging that venue lay exclusively in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Following a March 2008 hearing, the trial court denied DHH's exception of improper venue. In November 2008, DHH filed a motion for summary judgment, which was denied. It also filed an exception of prescription, arguing that MCGC's claims were barred by a one-year prescriptive period. Following an August 2009 hearing, the trial court denied DHH's motions. DHH filed for supervisory writs with this court, which were denied in January 2010. The supreme court further denied writs. Additional extensive pre-trial motions were filed by the parties. In March 2011, MCGC filed a partial motion and order to dismiss Thibodeaux with prejudice. MCGC also dismissed Guidry and Clause without prejudice.

Defendants filed a motion to exclude testimony of plaintiff's expert, Daphne Clark. Following a March 2011 hearing, the trial court declined to exclude the testimony. Defendants applied for writs to this court, which were denied.

Following a ten-day jury trial in August 2010, both parties moved for directed verdicts on various issues, which were denied. The jury returned a verdict in favor of MCGC in the amount of $7,412,383.00 finding that DHH engaged in wrongful conduct, not subject to an immunity, that damaged MCGC. The damages awarded consisted of $4,525,846.00 for residential units, $99,560.00 for commercial units, and $2,786,977.00 for loss of business reputation. DHH filed a motion to conform judgment, relying on the statutory cap against state defendants found in La.R.S. 13:5106. The trial court denied the motion.

DHH filed a motion for new trial. Following a March 2, 2012 hearing, the trial court denied the motion.

In disposing of the issue of prescription asserted by the State, this court found *the ten-year prescriptive period for actions on contract applied.* We explained our decision regarding detrimental reliance and prescription as follows:

While a claim for detrimental reliance cannot exist when the state is "following, applying and executing" its statutory and regulatory powers, that is not the case here. Furthermore, claims against governmental agencies sounding in detrimental reliance are not per se prohibited. We find the facts of this case distinguishable from those of *Wooley v. Lucksinger,* 06-1167 (La.App. 1 Cir. 5/4/07), 961 So.2d 1228, because DHH specifically failed to enforce its own regulations against MCGC's competitors after numerous oral and written promises in favor of MCGC to do so. Moreover, we agree with MCGC that DHH mischaracterizes its reliance. MCGC's damages resulted from DHH's failure to enforce the Sanitary Code as it promised, thereby allowing its competitors to undercut its prices.

Again, a substantial basis of DHH's argument is that Section 729 only applies to detached pumps, thus, "MCGC's detrimental reliance claim relative to the residential sewer treatment plants is based on an alleged promise made to Murphy Cormier by DHH to apply and enforce the Sanitary Code in accordance with Murphy Cormier's interpretation of the Sanitary Code." As we have affirmed the jury's finding with regard to Section 729's application to both attached and detached pumps, this argument fails.

DHH further relies on *Showboat Star Partnership v. Slaughter,* 00–1227 (La.4/3/01), 789 So.2d 554, for the proposition that a

plaintiff incurs no injury when it does what it is legally obligated to do under the correct interpretation of the law. The *Showboat* plaintiffs paid sales taxes under protest because the Department of Revenue had formerly told them no taxes were due. The trial court and court of appeal found that although the taxes were due, the state was precluded from collecting them because of the doctrines of detrimental reliance and equitable estoppel. The supreme court disagreed finding that "[d]etriment resulting from reliance simply has not been proved." *Id.* at 563.

The supreme court referenced the court of appeal's application of four additional factors required to invoke detrimental reliance against a governmental agency. The court of appeal found that a "somewhat greater burden may be appropriate." *Showboat Star P'ship v. Slaughter,* 98–2882, p. 7 (La.App. 1 Cir. 2/18/00), 752 So.2d 390, 394, *rev'd on other grounds,* 00–1227 (La.4/3/01), 789 So.2d 554. The additional factors include: "(1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel." *Id.* Even applying the more restrictive principles set forth in *Showboat*, which were included in the jury instructions, we find that MCGC met its burden of proof by a preponderance of the evidence. Cormier was given unequivocal advice from Dr. Guidry, Fourrier, and other DHH employees that he would be given an extension of time and that DHH would enforce the Sanitary Code against his competitors. Cormier reasonably relied on that advice and dropped his original lawsuit. MCGC's business suffered extreme harm including loss of substantial business and damage to its reputation such that engineering firms refused to do business with them. *Finally, it would be grossly unjust to allow DHH to get away with the multiple egregious actions perpetrated against Cormier by its various employees.*

DHH further argues that *Showboat* stands for the principle that "no detriment is incurred when the plaintiff's only identifiable injury is that it must do what it was legally obligated to do under the correct interpretation of the law." We find that principle inapplicable to the facts of this case. The fact that Cormier complied with the requirements of Section 729 has no bearing on the fact that the state did not enforce it against others. *Showboat* involved the failure to pay taxes based on a misrepresentation by the state. While it may be true that a party cannot incur detriment when its only injury is that it must pay taxes due under the law, that is not the case here. Moreover, we have found that a party relied to its detriment on the tax-related advice rendered by one of its employees after considering the four additional factors set forth in *Showboat. See CHL Enter., LLC, d/b/a Loewer Lawn & Cycle v. State of La., Dep't of Revenue,* 09–487 (La.App. 3 Cir. 11/4/09), 23 So.3d 1000, *writ denied,* 09–2613 (La.2/12/10), 27

3

So.3d 848. The facts of this case are clearly distinguishable from *Showboat*. Finally, *Showboat* affirms our previous statement that detrimental reliance claims against government entities are not prohibited as a rule. If they were, there would be no need to analyze the four additional factors.

*Id*. at 597-98 (emphasis added).

Moreover this court specifically stated the rationale for its ruling upholding the judgment against the State:

> **Detrimental reliance claims based in contract are subject to a ten year prescriptive period**. *First La. Bank v. Morris & Dickson, Co., LLC,* 45,668 (La.App. 2 Cir. 11/3/10), 55 So.3d 815.[FN11] Furthermore, a promisor who lulls the promisee into a false sense of security that an action will be taken cannot avail itself of a claim of prescription. *Babkow v. Morris Bart, P.L.C.,* 98–256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423; *Fontenot v. Houston Gen. Ins. Co.,* 467 So.2d 77 (La.App. 3 Cir.1985). Although we find the ten-year prescriptive period applicable to MCGC's claims*, **these circumstances are ones in which estoppel would lie as DHH's repeated promises to MCGC that it would investigate and enforce its code induced Cormier into abandoning his original lawsuit. DHH's multiple failures to do as it promised over many years would justify it being estopped from claiming that MCGC's action is prescribed.***
>
> FN11. Notably, La.Civ.Code art.1967 is under that portion of the Louisiana Civil Code that pertains to contracts. Scholarly interpretation of La.Civ.Code art.1967 buttresses the argument that detrimental reliance claims sound in contract: "the new article of the Louisiana Civil Code subtracts induced reliance from the quasi-delictual field and places it where it belongs, in contract." Saul Litvinoff, *Still Another Look at Cause,* 48 La. L.Rev. 3, 27 (1987).

*Id*. at 598-99 (emphasis added).

On February 18, 2014, the State of Louisiana filed suit in the Fourteenth Judicial District Court seeking to annul the judgment in the previous suit affirmed by this court with writs denied by the Louisiana Supreme Court. The State asserts in its petition the judgment previously rendered is null and void because the trial court lacked subject matter jurisdiction. This is so, says the State, because the State enjoys sovereign immunity from suits other than "suit and liability in contract

4

or for injury to person or property," and suits authorized by the legislature. *See* La.Const. art. 12, § 10(A)-(B). The State makes this assertion despite the plain language in this court's previous opinion clearly stating *contract law* as a basis of recovery as well as *estoppel* regarding the application of prescription to Murphy Cormier General Contractors, Inc.'s (herein referred to as "Murphy" and referred to in the previous case as "MCGC") tort claim. Nevertheless, the State further maintains the judgment was based on detrimental reliance, which, it asserts, is analogous to a claim for unjust enrichment. According to a recent holding by the Louisiana First Circuit Court of Appeals in *West Jefferson Medical Center Medical Staff v. State of Louisiana*, 11-1718, (La. App. 1 Cir. 4/16/13)(unpublished opinion), *writ denied*, 13-1102, (La. 6/21/13), 118 So.3d 423, the State maintains it is immune under the Louisiana Constitution from quasi-contract suits.

The trial court granted Murphy's exception of no cause of action and *res judicata*, dismissing the State's claims. The State appeals.

## LAW AND ANALYSIS

The State asserts the trial court and this court had no subject matter jurisdiction to hear the original suit and therefore the judgment is null and void. We reject this argument. Louisiana Code of Civil Procedure Article 2002 provides in pertinent part:

> A. A final judgment shall be annulled if it is rendered
>
> . . . .
>
> (3) By a court which does not have jurisdiction over the subject matter of the suit.
>
> B. Except as otherwise provided in Article 2003, an action to annul a judgment on the grounds listed in this Article may be brought at any time.

5

The Louisiana Supreme Court recently reiterated the definition of subject matter jurisdiction in *Allen v. Allen*, 13-2778 p. 4 (La.5/7/14), 145 So.3d 341, 344, "Subject matter jurisdiction is defined by the Louisiana Code of Civil Procedure as 'the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.' La. [Code Civ.P.] art. 2." In *Chavers v. Bright Truck Leasing*, 06-1011, p. 3 (La.App. 3 Cir. 12/6/06), 945 So.2d 838, 842, *writ denied,* 07–304 (La. 4/5/07), 954 So.2d 141 (emphasis added), we described the difference between an assertion of lack of subject matter jurisdiction and res judicata:

> Subject matter jurisdiction is defined in La.Code Civ.P. art. 2 as "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." "Res judicata is an issue and claim preclusion device which prohibits relitigation of matters which were litigated *or could have been litigated in a prior suit.*" *Walker v. Howell,* 04-246, p. 3 (La.App. 3 Cir. 12/15/04), 896 So.2d 110, 112 (emphasis omitted); La.R.S. 13:4231; La.Code Civ.P. art. 425.

In *Gandy v. Key Realty, L.L.C.,* 13-712, p. 2 (La.App. 3 Cir. 12/11/13), 128 So.3d 678, 679, (citation omitted) we held: "An issue of subject matter jurisdiction raises a question of law which is reviewed de novo to determine whether the lower court was legally correct." "[T]he sovereign immunity defense is a challenge to the exercise of a state court's subject matter jurisdiction." *Shipyard,* 563 So.2d 394, 398 (La.App. 1 Cir.), *writ denied*, 567 So.2d 394, 398 (La.App. 1 Cir.), *writ denied*, 567 So.2d 108 (La. 1990). Thus, if the State enjoys sovereign immunity from all of Murphy's claims, the judgment rendered in Murphy's favor would be null and unenforceable. We find the State is not immune from Murphy's contract

6

and/or tort claims. *See* La.Const. art. 12, § 10(A)-(B). The trial court and this court had subject matter jurisdiction to render judgment in favor of Murphy.

This court previously determined Murphy is entitled to relief based on its contract claim and, alternatively, declared the State is estopped from raising an exception of prescription to foreclose Murphy's tort claims for injury resulting from the bad behavior of State employees. The State alleges Murphy's detrimental reliance claim does not sound in contract, and therefore the State is immune from suit. Even if we were to find merit in this claim, which we do not, this court has previously held the State is estopped from alleging Murphy's tort claim has prescribed and that holding is *res judicata*.

Louisiana's recognition of the doctrine of *contra non valentem*, or equitable estoppel, dates back to French Louisiana before statehood. As early as 1817, the Louisiana Supreme Court employed the maxim as though it was "a natural component of Louisiana law." Benjamin West Janke, Fran Ois-Xavier Licari, *Contra Non Valentem In France and Louisiana: Revealing the Parenthood, Breaking a Myth*, 71 La. L. Rev. 503, 506 (2011). In the early twentieth century the Louisiana Supreme Court explained the foundational principles of equitable estoppel in *Hyman v. Hibernia Bank & Trust Co.*, 139 La. 411, 71 So. 598, 602 (La. 1916)(emphasis added):

> In *First Mass. Turnpike Corp. v. Field*, 3 Mass. 201, 3 Am. Dec. 124, where the defendant had covered up the defective work in a road so that the defects developed only after the prescriptive period had run, prescription was held not to apply.

> The remarks of the court in that case are apposite in this:

> > 'On principle there can be but one opinion. In this the moral sense of all mankind must occur. The defendants undertook to perform a piece of business for the plaintiffs, and were paid for it. In the performance of

7

their contract they acted fraudulently and deceitfully, to the detriment of the plaintiffs. Upon the discovery of the fraud, and within the time limited for bringing this species of action, the plaintiffs demand redress of the wrong which they have received. By the pleadings, all this is acknowledged by the defendants; but they say the plaintiffs cannot recover, because more than 6 years have intervened since they received the plaintiffs' money, and since they completed the road in the manner in which they made it. Is this an answer which ought to be deemed satisfactory in a court of justice? I think not. * * * The delay of bringing the suit is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued, until the plaintiff could obtain the knowledge that he had a cause of action. If this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law if we permitted the defendant to avail himself of his own fraud.'

We do not cite the civil law authorities further than has been done for the reason that the rule, 'Contra non valentem, agere non currit prescriptio,' is there recognized in its full scope and operation.

The decision in *Cox v. Von Ahlefeldt* [30 So. 175, (La.1900)] in no wise militates against the proposition that a wrongdoer cannot be allowed to reap the fruits of his wrong because of the fact that through further fraud and deceit he keeps the injured person in ignorance of what has been done until the prescriptive period has run.

> 'The doctrine of equitable [estoppel] may, in a proper case, be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that when a defendant, electing to set up the statute, previously **by deception or any violation of duty toward plaintiff** has caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which equity will not allow him to hold. 25 Cyc. 1016, *Limitation of Actions*.
>
> *Where a defendant has, by deception or by any violation of duty towards plaintiff, caused him to subject his claim to the bar of limitations, equity will not permit him to hold the advantage thus obtained. Clark v. Augustine*, 62 N. J. Eq. 689, 51 Atl. 68.'

8

*See also Webb v. Blue Cross Blue Shield of Louisiana*, 97-681 (La.App. 1 Cir. 4/8/98) 711 So.2d 788, previously cited by this court, in accord.

This court previously held the State deceived Murphy and on multiple occasions violated its duties toward Murphy. The previous panel of this court concluded the State's false representations and deceitful behavior caused Murphy to abandon his first suit and not file a new suit until it became clear that the State had continued to engage in wrongful conduct and false representations. Contrary to the State's repeated promises it did not enforce its regulations against Murphy's competitors continually giving them an unfair advantage over Murphy. Moreover, the State's employees engaged in willful misconduct attempting to ruin Murphy's business enterprise. This court upheld the jury's findings and expressly held in the alternative the State is estopped from using the statute of limitations to bar Murphy's tort claims against it. The Louisiana Supreme Court denied writs. *See, Cormier*, 125 So.3d 430. That holding is *res judicata* and we underscore its correctness.

We further note, the State continues to ignore the fact that the issue of whether Murphy's tort claims were prescribed has been before this court and the state supreme court on multiple occasions in this case. In the original suit against Murphy, the State filed an exception of prescription based on the one-year prescriptive period for torts. The trial court denied the exception, and both this court and the state supreme court denied writs. On appeal to this court in *Cormier*, 114 So.3d 567, the State again re-urged its exception of prescription based on the one-year prescriptive period for torts. This court again held Murphy's tort claims are not prescribed:

[A] promisor who lulls the promisee into a false sense of security that an action will be taken cannot avail itself of [a] claim of prescription. *Babkow v. Morris Bart, P.L.C.,* 98–256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423; *Fontenot v. Houston Gen. Ins. Co.,* 467 So.2d 77 (La.App. 3 Cir.1985). Although we find the ten-year prescriptive period applicable to MCGC's claims, these circumstances are ones in which estoppel would lie as DHH's repeated promises to MCGC that it would investigate and enforce its code induced Cormier into abandoning his original lawsuit. DHH's multiple failures to do as it promised over many years would justify it being estopped from claiming that MCGC's action is prescribed.

*Cormier,* 114 So.3d 598-99.

The State filed writs with the state supreme court re-urging its exception of tort-based prescription, among other issues. Again the Louisiana Supreme Court, 7-0, denied writs. *Murphy Cormier Gen. Contractor, Inc. v. State, Dep't of Health & Hospitals,* 13-1491 (La. 11/1/13), 125 So. 3d 430. Thus, we are barred from entertaining the State's renewed prescription plea advanced in this nullity action to defeat the court's subject matter jurisdiction. The prior rulings of the trial court, this court, and state supreme court are final on this issue and are entitled to *res judicata* effect.

The general principles found in the laws on Obligations and Contracts in Louisiana, defines obligations as "[A] legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." La.Civ.Code art. 1756. We may easily substitute the words "promisor and promisee" for "obligor and obligee." The Code also identifies the "sources of obligations" in La.Civ.Code art. 1757:

Obligations arise from contracts and other declarations of will. They also arise directly from the law, regardless of a declaration of will, in instances such as wrongful acts, the management of the affairs of another, unjust enrichment and other acts or facts.

The Code defines a contract as "[A]n agreement by two or more parties whereby obligations are created, modified, or extinguished." La.Civ.Code art. 1906. The Code also sets forth in La.Civ.Code art. 1927:

A contract is formed by the consent of the parties established through offer and acceptance.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

In *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459,04-1460, 04-1466, p. 30-32 (La. 4/12/05), 907 So.2d 37, 58-59(emphasis added), the Louisiana Supreme Court, explaining Louisiana's concept of detrimental reliance, now found in La.Civ.Code art. 1967, stated:

The theory of detrimental reliance is codified at La.Civ.Code art.1967:

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The doctrine of detrimental reliance is "'designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence.'" *Babkow v. Morris Bart, P.L.C.,* 1998-0256 (La.App. 4 Cir. 12/16/98), 726 So.2d 423, 427 (quoting *Orr v. Bancroft Bag, Inc.,* 29,046 (La.App. 2 Cir. (1/22/97), 687 So.2d 1068, 1070)). To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.,* 2003-

11

1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 393, *writ denied,* 2004-0969 (La.6/25/04), 876 So.2d 834; *Babkow,* 726 So.2d at 427.

The Louisiana Supreme Court clearly describes detrimental reliance as breach of an agreement, proof of which does not require a "formal" written instrument. *Id.* There is a promisor and a promisee (otherwise referred to in our Civil Code as "obligor" and "obligee"), there is cause, there is offer and acceptance, i.e., the promisor offers to do or not do something, and the promisee, accepting that offer or promise, acts accordingly and suffers loss to his detriment. The contractual obligation evidenced by detrimental reliance does not fail for want of the promisor's intent to be bound because the full proof that there was offer and acceptance is evidenced by the damage suffered by the promisee in relying on the promisor's representations. "Induced reliance," as codified in Civil Code Article 1967, also suffices as the "*cause raisonable et juste*" which French courts have held constitutes grounds for enforcement of the promise. Saul Litvinoff, *Still Another Look at Cause*, 48 La. L. Rev. 3, 28 (1987). Thus there need not be some formal written contract in place for the aggrieved party to recover for breach of the agreement. This is precisely what happened here. The trial court and this court found the State made promises to Murphy which it did not keep, and Murphy, relying on those promises, suffered loss which a jury determined to be $7,412,383.00.

In *Duckett v. Grambling State Univ.*, 47,082, p. 13-14 (La.App. 2 Cir. 4/18/12), 92 So.3d 478, 485-86, *writ denied*, 12-1130 (La. 9/14/12), 99 So.3d 32 (emphasis added), the second circuit looked to case law from common law jurisdictions relying on the Second Restatement of Contracts for a better understanding of the *contractual nature* of detrimental reliance:

A very similar case decided by the application of the detrimental reliance theory of the Second Restatement of Contracts is *McAndrew v. School Committee of Cambridge,* 20 Mass.App.Ct. 356, 480 N.E.2d 327 (1985). In that case the managing directors for music education in the school district interviewed and selected the plaintiff to fill a band director position immediately before the start of the school year. The plaintiff had become aware of the opening while living in Georgia and his acceptance of the job caused his move to Massachusetts. Plaintiff was told that his employment had to be approved by the school district committee in accordance with a statutory provision for school governance. However, "he was assured that approval would be no more than a 'rubber stamp' which would be granted upon the recommendation of the directors." *Id.,* 480 N.E.2d at 329. The directors also told the plaintiff of their informal polling of the members of the committee, and plaintiff even contacted one of the committee members. Upon plaintiff's commencement of this job, the directors never submitted his name to the superintendent of schools and the school committee, and after 3–1/2 weeks of teaching, plaintiff was fired. Plaintiff sued for the breach of a one-year teaching contract and his entire salary for the year, and alternatively for detrimental reliance.

The Massachusetts court of appeal first ruled that the public policy interest of the statute requiring formal approval of the school district committee precluded the award of damages for the breach of the proposed one-year contract. However, turning to the alternative claim for detrimental reliance, the court explained:

> While [the statute] denies the directors ultimate hiring authority, the statute does not preclude the interviewing and negotiating with prospective applicants by subordinates of the school committee. Implicit in the jury verdict is a finding that, at the very least, **the directors gave the plaintiff a subsidiary promise** that, barring some valid reason, they would submit his name to the superintendent and the school committee. *The record does not suggest that this subsidiary promise to recommend the plaintiff was beyond their authority or that it offends any statute or legislative policy.*
>
> \* \* \* \* \* \*
>
> **No rule requires that agents of the defendants, acting within the scope of their authority, be totally exempt from the principles of fair dealing or be permitted to act arbitrarily.** On the record before us, the promise does not require any relaxation of the requirements of law intended to protect the public interest and appears authorized. Indeed, the promise may be viewed as vital and proper to obtain

needed services for the defendants. **We see no reason not to enforce it.**

*McAndrew, supra,* 480 N.E.2d at 331. Citing the section of the Restatement of Contracts, the court concluded that "[t]here is no question that **the directors' subsidiary promise** falls within the section and that **reliance can form the basis of an enforceable promise** in Massachusetts."

This is analogous to the situation presented in this case. The State made promises to Murphy which it did not keep, and he relied on those promises to his detriment. The State's promise, and his reliance thereupon, form the basis of an enforceable contract. The Louisiana Civil Code Article 1967, Revision Comment (D) provides that "[u]nder this Article, a promise becomes an **enforceable obligation** [a contract] when it is made in a manner that induces the other party to rely on it to his detriment." A formal, written, underlying contract is not necessary to prove the existence of a binding contractual agreement where the plaintiff can show a promise was made, he relied on the promise, the promise was broken, and as a result he suffered loss. In *First Louisiana Bank v. Morris & Dickson, Co., LLC*, 45,668, p. 17 (La.App. 2 Cir. 11/3/10), 55 So.3d 815, 825-26 (emphasis added), the second circuit specifically held that *actions based on detrimental reliance are actions on contract* subject to ten-year prescription:

> Morris & Dickson contends that detrimental reliance is based in tort and that the prior decision of this court found that any detrimental reliance claims in this case had prescribed. To the contrary, this court's prior opinion held that any tort claims which might be involved in the case had prescribed but that **the claims presented were based in contract.** Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. An action on a contract is governed by the prescriptive period of 10 years for personal actions. La. C.C. art. 3499; *Trinity Universal Insurance Company v. Horton,* 33,157 (La.App.2d Cir.4/5/00), 756 So.2d 637. The correct prescriptive period to be applied in any action depends upon the nature of the action; it is the nature of the duty breached that should determine whether an action is in tort or in contract. *Trinity Universal Insurance Company v. Horton, supra.* The classical distinction between

"damages ex contractu" and "damages ex delicto" is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty to all persons. *Harrison v. Gore,* 27,254 (La.App.2d Cir.8/23/95), 660 So.2d 563, *writ denied,* 95–2347 (La.12/8/95), 664 So.2d 426.

In the Louisiana Civil Code revision of 1984, La. C.C. art. 1967, which concerns **cause** and detrimental reliance, was enacted. *This article is contained in that portion of the Louisiana Civil Code dealing with contracts.* In Saul Litvinoff, *Still Another Look at Cause,* 48 La. L.Rev. 3 (1987), construing La. C.C. art. 1967, the author states that "*the new article of the Louisiana Civil Code subtracts induced reliance from the quasi-delictual field and places it where it belongs, in contract.*"

We also note that the jurisprudence holds that claims for detrimental reliance arising out of contracts are not subject to the one-year prescriptive period for torts. See *Babkow v. Morris Bart, P.L.C.,* 1998–0256 (La.App. 4th Cir.12/16/98), 726 So.2d 423. Therefore, Mr. Tuminello's detrimental reliance claim, based upon an alleged contract, has not prescribed.

The federal courts are in accord with our finding that detrimental reliance sounds in contract. In *Stokes v. Georgia-Pacific Corp.*, 89-4403, 894 F.2d 764, 770 (5th Cir. 1990), the court found:

La.Civ.Code art. 1967 was enacted in the 1984 revision of the Obligations section of the Civil Code. It appears in Book III, Title IV, entitled "Conventional Obligations or Contracts." Furthermore, the eminent scholar who directed the drafting of the new articles expressly places detrimental reliance in the contract realm, Litvinoff, *Still Another Look at Cause*, 48 La.L.Rev. 3, 27-28 (1987).

Detrimental reliance, codified in the Louisiana Civil Code under the law of "Conventional Obligations or Contracts" is a claim based on a contractual obligation. This article appears in the Civil Code under the sub-heading "Cause" as part of the law on contracts in La. Civ.Code art. 1967, (emphasis added) which provides in pertinent part:

*Cause* is the reason why a party *obligates* himself.

15

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.

*Following the adoption of Article 1967, there clearly was a contract breached in this case because post-1967 claims based on "detrimental reliance" are contractual claims.* Moreover, as this court previously held, the State is estopped from asserting an exception of prescription as to Murphy's tort claims and that holding is *res judicata*. The trial court and this court had subject matter jurisdiction to render a valid judgment which has long since become a final judgment. The State is not "exempt from the principles of fair dealing," *Duckett*, 92 So.3d at 486, quoting McAndrew and does not enjoy sovereign immunity to breach its contractual obligations or to engage in activity that deliberately causes "injury to person or property." La.Const. art. 12, § 10(A)-(B).

The judgment of the trial court is affirmed and all costs of these proceedings are assessed against the State in the amount of $961.64 pursuant to La.RS. 13:5112.

**AFFIRMED.**

NUMBER 15-111

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

MURPHY CORMIER GENERAL CONTRACTOR, INC.

AMY, J., concurring in the result.

I agree with the majority that an affirmation is warranted. However, I write separately as I find that this case is resolved by a bare application of the prior panel's now-final ruling in *Murphy Cormier General Contractor, Inc. v. State, Dep't of Health and Hospitals*, 12-1000 (La.App. 3 Cir. 5/22/13), 114 So.3d 567, *writ denied*, 13-1491 (La. 11/1/13), 125 So.3d 430. Simply, the panel in that prior appeal found the ten-year, contractual prescriptive period applicable. *Id.* In my opinion, that characterization of the claim as one based in contract places this matter within the waiver of sovereign immunity described by La.Const. art. 12, §10(A) (providing that "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability *in contract* or for injury to person or property.") (emphasis added). As contractual claims are included within the explicit waiver of sovereign immunity contained in Article 12, I find no merit in the State's contention that the supreme court's decision in *Canal/Claiborne, Ltd. v. Stonehenge Dev., LLC,* 14-664 (La. 12/9/14), 156 So.3d 627, indicates that the trial court was without subject matter jurisdiction in this case.

Accordingly, for the above, limited reason, I join in the result reached by the majority.